

**'08 CIV 5514**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| VINCENT W. TAVENTERE.<br><br>                              Plaintiffs,<br><br>           -against-<br><br>AMERICAN EXPORT LINES, et. al.<br><br>                              Defendants. | **Index No.:  08-107016**<br><br>**NOTICE OF NOTICE OF REMOVAL** |

**TO: THE HONORABLE JUDGE OF THE SUPREME COURT:**

   Please take notice that Defendant Foster Wheeler LLC'S Notice of Removal of the above-entitled action from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York,  (a copy of which Notice [without exhibits] is attached as Exhibit "A") was duly filed in the United States District Court for the Southern District of New York, on the 18th day of June, 2008.

   Defendant Foster Wheeler LLC upon filing of Defendant Notice of Removal and a copy of the Notice with the Clerk of the state court, has effected this removal in accordance with 28 U.S.C.

§ 1446(d). This Court is respectfully requested to proceed no further in this action, unless and until such time as the action may be remanded by order of the United States District Court.

Respectfully submitted,

By: _____

Michael A. Tanenbaum
SEDGWICK, DETERT, MORAN & ARNOLD LLP
Three Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 242-0002
ATTORNEYS FOR DEFENDANT,
Foster Wheeler LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to Plaintiff's counsel via hand delivery and all known counsel of record via regular mail on this 18th day of June, 2008

**<u>Via Hand Delivery</u>**

Jerome H. Block, Esq.
Levy Phillips & Konigsberg, LLP
800 Third Avenue
New York, New York 10017
Attorneys for Plaintiffs

All Known Defense Counsel (via regular mail)

_____
Michael A. Tanenbaum

#6/6/08
#10011312

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
——————————————————————X

WARREN W. TAVENIERE,

           **Plaintiff,**

    - against -

AMERICAN EXPORT LINES, et al.,

           **Defendants.**
——————————————————————X

**STATEMENT OF SERVICE BY MAIL AND
ACKNOWLEDGMENT OF RECEIPT BY
MAIL OF SUMMONS AND COMPLAINT**

INDEX NO: 08/107016
DOP: 5/20/08

FOSTER WHEELER
Perryville Corporate Park
P.O. Box 4000
Clinton, NJ 08809

    The enclosed Summons and Complaint are served pursuant to § 312-a of the Civil Practice Law and Rules.

    To avoid being charged with the expense of service upon you, you must sign, date and complete the Acknowledgment part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

    If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

    If you have received a Complaint with this statement, the return of this statement and Acknowledgment does not relieve you of the necessity to answer the Complaint. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult an attorney, you should do so as soon as possible before the twenty (20) days expire.

    If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

    It is a crime to forge a signature or to make a false entry on this statement or on the Acknowledgment.

    I declare, under penalty of perjury, that this Statement of Service by Mail and Acknowledge of Receipt by Mail of Summons and Complaint will have been mailed on May 22, 2008.

_Marjorie Milano_                         _May 22, 2008_
Signature                                       Date of Signature
Levy Phillips & Konigsberg, 800 Third Avenue, New York, New York 10022
Address

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I received a Summons and Complaint in the above-captioned matter at [INSERT ADDRESS] _Perryville_
_Corporate Park, Clinton, N.J. 08809-4000._
PLEASE CHECK ONE OF THE FOLLOWING;

                IF 2 IS CHECKED, COMPLETE AS INDICATED

        1. ☑        I am not in the military service.

        2. ☐        I am in military service and my rank, serial number and branch of service are as follows;

Rank:_____             Branch of Service:_____

Serial Number:_____

Date: _05/28/08_        TO BE COMPLETED REGARDLESS OF MILIARY STATUS:
    (Date this Acknowledgment is executed)

I affirm the above as true under penalty of perjury. _[signature]_

                                  Signature

                                  Print Name

                                  Name of Defendant for which acting

                                  Position with Defendant for which acting (i.e., officer, attorney, etc.)
                          **Please Complete All Blanks Including Dates**

00117911.WPD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------X

WARREN W. TAVENIERE,

          **Plaintiff,**

   - against -

AMERICAN EXPORT LINES, et al..,

          **Defendants.**
--------------------------------------------------------------X

**STATEMENT OF SERVICE BY MAIL AND ACKNOWLEDGMENT OF RECEIPT BY MAIL OF SUMMONS AND COMPLAINT**

INDEX NO. 08/107016
DOF: 5/20/08

FOSTER WHEELER
Perryville Corporate Park
P.O. Box 4000
Clinton, NJ 08809

The enclosed Summons and Complaint are served pursuant to § 312-a of the Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and complete the Acknowledgment part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

If you have received a Complaint with this statement, the return of this statement and Acknowledgment does not relieve you of the necessity to answer the Complaint. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the Acknowledgment.

I declare, under penalty of perjury, that this Statement of Service by Mail and Acknowledge of Receipt by Mail of Summons and Complaint will have been mailed on May 22, 2008.

_____          _____May 22, 2008_____
Signature                                     Date of Signature
Levy Phillips & Konigsberg, 800 Third Avenue, New York, New York  10022
Address

**ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT**

I received a Summons and Complaint in the above-captioned matter at [INSERT ADDRESS]_____

PLEASE CHECK ONE OF THE FOLLOWING;
        IF 2 IS CHECKED, COMPLETE AS INDICATED
    1. ☐          I am not in the military service.
    2. ☐          I am in military service and my rank, serial number and branch of service are as follows:
Rank:_____       Branch of Service:_____

Serial Number:_____

                     *TO BE COMPLETED REGARDLESS OF MILIARY STATUS:*

Date: _____
      (Date this Acknowledgment is executed)

I affirm the above as true under penalty of perjury.

                    _____
                    Signature

                    _____
                    Print Name

                    _____
                    Name of Defendant for which acting

                    _____
                    Position with Defendant for which acting (i.e., officer, attorney, etc.)
                **Please Complete All Blanks Including Dates**

00117911.WPD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WARREN W. TAVENIERE,                                Index No. 08/107016
                                                    DOF: 5/20/08
                          Plaintiff,

                   - against-
                                                    **SUMMONS**

AMERICAN EXPORT LINES
        f/k/a Farrell Lines Incorporated;
AMERICAN STANDARD, INC.;
A.O. SMITH WATER PRODUCTS COMPANY;                  Plaintiff designates
AURORA PUMP COMPANY;                                NEW YORK COUNTY
A.W. CHESTERTON CO., INC.;                          as the Place for Trial
BUFFALO PUMPS, INC.,
        individually and as a subsidiary of         The basis for venue is
        AMPCO-PITTSBURGH CORP.;                     plaintiff place of residence
BURNHAM HOLDINGS, INC.;
        as successor to Burnham Corporation;
CARRIER CORPORATION,                                Plaintiff resides at
        a/k/a Bryant Manufacturing Corporation;     59 Ward Place
CERTAINTEED CORPORATION;                            Fishkill, NY 12524
C.H. WHEELER MANUFACTURING CO.;
CLEAVER BROOKS COMPANY;
CONSOLIDATED VALVE, LTD.;
CRANE CO.;
CRANE PUMPS & SYSTEMS, INC.;
DIAL CORP.,
        individually and as Successor to Griscom Russell
        Schack Company,Inc.;
DUNHAM-BUSH, INC.;
DURABLA MANUFACTURING COMPANY;
ELLIOTT TURBOMACHINERY CO., INC.;
FAIRBANKS-MORSE PUMP CORPORATION;
FOSTER WHEELER;
GARDNER DENVER, INC.;
GARLOCK SEALING TECHNOLOGIES, LLC,
        successor by merger to GARLOCK, INC.;
GENERAL REFRACTORIES, CO.;
GOULDS PUMPS INCORPORATED;
HB SMITH COMPANY INCORPORATED;
HERCULES CHEMICAL COMPANY, INC.;
HOPEMAN BROTHERS, INC.;

NEW YORK
COUNTY CLERK'S OFFICE

MAY 20 2008

NOT COMPARED
WITH COPY FILE

00117252.WPD

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
500 THIRD AVENUE
NEW YORK, N.Y. 10022

IMO INDUSTRIES, INC.,
     as successor-in-interest to and f/k/a Delaval Turbine,
     Transamerica Delaval, IMO Delaval and
     Enterprise Engine & Foundry Co.;
INGERSOLL-RAND COMPANY,
     individually and as successor to Terry Steam Turbine Company;
J.H. FRANCE REFRACTORIES COMPANY;
JOHN CRANE, INC.;
KAISER GYPSUM COMPANY, INC.;
KUNKLE INDUSTRIES;
LENNOX INDUSTRIES, INC.;
LESLIE CONTROLS, INC.;
MOORE-McCORMACK LINES;
NATIONAL U.S. RADIATOR,
     a division of Crane Co.;
RAPID-AMERICAN CORPORATION,
     as successor-in-interest to Phillip
     Carey Manufacturing Corp.;
RHEEM-MANUFACTURING COMPANY;
ROBINS LINES;
TACO, INC.;
THE ANCHOR PACKING CO.;
THE FALK CORPORATION;
TUTHILL ENERGY SYSTEMS, INC.;
TYCO FLOW CONTROL, INC.;
UNION CARBIDE CORP.;
VIACOM INC.,
     successor by merger to CBS Corporation,
     f/k/a Westinghouse Electric Corporation;
WARREN PUMPS;
WEIL McLAIN.
     a division of The Marley Company;
YARWAY CORPORATION;

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

*TO THE ABOVE NAMED DEFENDANTS:*

    ***You are hereby summoned*** to answer in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete is this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
   May 19, 2008

     LEVY PHILLIPS & KONIGSBERG, L.L.P.


    By: _____
      Audrey P. Raphael

    800 Third Avenue, 13th Floor
    New York, NY 10022
    (212) 605-6200
    Attorneys for Plaintiff

00117252.WPD      -3-

## DEFENDANTS ADDRESSES

AMERICAN EXPORT LINES
f/k/a Farrell Lines Incorporation
Via Secretary of State
Albany, NY

AMERICAN STANDARD, INC.
Via Secretary of State
Albany, NY

A.O. SMITH WATER PRODUCTS
COMPANY
11270 West Park Place
Milwaukee, WI 53224

AURORA PUMP COMPANY
c/o Karen Carriker
13515 Ballantyne Corporate Place
Charlotte, NC 28277

A.W. CHESTERTON CO., INC.
P.O. Box 4004
Woburn, MA 01888-4004

BUFFALO PUMPS, INC.
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

BURNHAM HOLDINGS, INC.
Via Secretary of State
Albany, NY

CARRIER CORPORATION
Via Secretary of State
Albany, NY

CERTAINTEED CORPORATION
750 East Swedes Ford Road
P.O. Box 860
Valley Forge, PA 19482

C.H. WHEELER MANUFACTURING CO.
Via Secretary of State
Albany, NY

CLEAVER-BROOKS INC.
c/o Ronald Thimm, Aqua-Chem, Inc.
7800 N. 113th Street
P.O. Box 421
Milwaukee, WI 53201

CONSOLIDATED VALVE, LTD.
105 East Fourth Street, Suite 300
Cincinnati, OH 45202

CRANE CO.
c/o C.T. Corporation System
111 Eighth Avenue
New York, NY 10011

CRANE PUMPS & SYSTEMS, INC.
c/o C.T. Corporation System
111 Eighth Avenue
New York, NY 10011

DIAL CORP.
Via Secretary of State
Albany, NY

DURABLA MANUFACTURING
COMPANY
790 E. Market Street, # 235
West Chester, PA 19382

00117252.WPD

-4-

ELLIOTT TURBOMACHINERY CO.,
INC.
North 4th Street
Jeannette, PA 15644

FAIRBANKS MORSE PUMP CORP.
Via Secretary of State
Albany, NY

FORT KENT HOLDINGS, INC.
f/k/a Dunham-Bush, Inc.
c/o Peter Langenus, Esq.
Schnader, Harrison, Segal & Lewis
140 Broadway, Suite 3100
New York, NY 10005

FOSTER WHEELER
Perryville Corporate Park
P.O. Box 4000
Clinton, NJ 08809

GARDNER DENVER, INC.
Via Secretary of State
Albany, NY

GARLOCK SEALING TECHNOLOGIES,
LLC
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

GENERAL REFRACTORIES CO.
225 City Avenue, Suite 114
Bala Cynwyd, PA 19004

GOULDS PUMPS INCORPORATED
Via Secretary of State
Albany, NY

HB SMITH COMPANY INCORPORATED
c/o Peter Stasz, Esq.
47 Westfield Industrial Park
Westfield, MA 01085

HERCULES CHEMICAL COMPANY,
INC.
111 South Street
Passaic, NJ 07055

HOPEMAN BROTHERS, INC.
Via Secretary of State
Albany, NY

INGERSOLL-RAND COMPANY
200 Chestnut Ridge Road
Woodcliff Lake, New Jersey 07675

J.H. FRANCE REFRACTORIES CO.
P.O. Box 276
895 Clarence Road
Snow Shoe, PA 16874-0276

JOHN CRANE, INC.
c/o CT Corporation System
111 Eighth Avenue
New York, NY 10011

KAISER GYPSUM COMPANY, INC.
Via Secretary of State
Albany, NY

KUNKLE INDUSTRIES
Via Secretary of State
Albany, NY

LENNOX INDUSTRIES, INC.
Via Secretary of State
Albany, NY

LESLIE CONTROLS, INC.
12501 Telecom Drive
Tampa, FL 33637

00117252.WPD

-5-

MOORE-McCORMACK LINES
Via Secretary of State
Albany, NY

NATIONAL U.S. RADIATOR
100 First Stamford Place
Stamford, CT 06902

RAPID-AMERICAN CORPORATION
The Prentice Hall Corporation
c/o Corporation Service Company
2711 Centerville Road
Wilmington, DE 19808

RHEEM-MANUFACTURING COMPANY
1100 Abernathy Road, Suite 1400
Atlanta, GA 30328

ROBINS LINES
Via Secretary of State
Albany, NY

TACO, INC.
1160 Cranston Street
Cranston, RI 02920

THE ANCHOR PACKING COMPANY
c/o Giller-Garrison
1 Marine Midland Plz
Ste. 1830
Rochester, NY 14604-2420

THE FALK CORPORATION
Via Secretary of State
Albany, NY

TUTHILL ENERGY SYSTEMS, INC.
Via Secretary of State
Albany, NY

TYCO FLOW CONTROL, INC.
9 Roszel Road
Princeton, NJ 08540

UNION CARBIDE
c/o CT Corporation
111 Eighth Avenue
New York, NY 10011

VIACOM, INC.
c/o Asbestos Litigation Support Manager
Eckert Seamans Cherin & Mellott, LLC
Case Management & Technology Center
600 Grant Street, 5th Floor
Pittsburgh, PA 15219

WARREN PUMPS, INC.
82 Bridges Avenue
P.O. Box 969
Warren, MA 01083-0969

WEIL McLAIN
500 Blaine Street
Michigan City, IN 46360-2388

YARWAY CORPORATION
2405 Maryland Road
Willow Grove, PA 19090

00117252.WPD

-6-

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WARREN W. TAVENIERE,                                    Index No.   08/107016
                                                         DOF: 5/20/08
                         Plaintiff,

              - against-
                                                         **COMPLAINT**

AMERICAN EXPORT LINES
        f/k/a Farrell Lines Incorporated;
AMERICAN STANDARD, INC.;
A.O. SMITH WATER PRODUCTS COMPANY;
AURORA PUMP COMPANY;                                     Plaintiff demands a
A.W. CHESTERTON CO., INC.;                               Trial by Jury
BUFFALO PUMPS, INC.,
        individually and as a subsidiary of
        AMPCO-PITTSBURGH CORP.;
BURNHAM HOLDINGS, INC.;
        as successor to Burnham Corporation;
CARRIER CORPORATION,
        a/k/a Bryant Manufacturing Corporation;
CERTAINTEED CORPORATION;
C.H. WHEELER MANUFACTURING CO.;
CLEAVER BROOKS COMPANY;
CONSOLIDATED VALVE, LTD.;
CRANE CO.;
CRANE PUMPS & SYSTEMS, INC.;
DIAL CORP.,
        individually and as Successor to Griscom Russell
        Schack Company,Inc.;
DUNHAM-BUSH, INC.;
DURABLA MANUFACTURING COMPANY;
ELLIOTT TURBOMACHINERY CO., INC.;
FAIRBANKS-MORSE PUMP CORPORATION;
FOSTER WHEELER;
GARDNER DENVER, INC.;
GARLOCK SEALING TECHNOLOGIES, LLC,
        successor by merger to GARLOCK, INC.;
GENERAL REFRACTORIES, CO.;
GOULDS PUMPS INCORPORATED;
HB SMITH COMPANY INCORPORATED;
HERCULES CHEMICAL COMPANY, INC.;
HOPEMAN BROTHERS, INC.;

00117267.WPD                          -1-

LEVY PHILLIPS &
KONISSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N Y 10022

IMO INDUSTRIES, INC.,
        as successor-in-interest to and f/k/a Delaval Turbine,
        Transamerica Delaval, IMO Delaval and
        Enterprise Engine & Foundry Co.;
INGERSOLL-RAND COMPANY,
        individually and as successor to Terry Steam Turbine Company;
J.H. FRANCE REFRACTORIES COMPANY;
JOHN CRANE, INC.;
KAISER GYPSUM COMPANY, INC.;
KUNKLE INDUSTRIES;
LENNOX INDUSTRIES, INC.;
LESLIE CONTROLS, INC.;
MOORE-McCORMACK LINES;
NATIONAL U.S. RADIATOR,
        a division of Crane Co.;
RAPID-AMERICAN CORPORATION,
        as successor-in-interest to Phillip
        Carey Manufacturing Corp.;
RHEEM-MANUFACTURING COMPANY;
ROBINS LINES;
TACO, INC.;
THE ANCHOR PACKING CO.;
THE FALK CORPORATION;
TUTHILL ENERGY SYSTEMS, INC.;
TYCO FLOW CONTROL, INC.;
UNION CARBIDE CORP.;
VIACOM INC.,
        successor by merger to CBS Corporation,
        f/k/a Westinghouse Electric Corporation;
WARREN PUMPS;
WEIL McLAIN.
        a division of The Marley Company;
YARWAY CORPORATION;

                                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

*TO THE ABOVE NAMED DEFENDANTS:*

        Plaintiff, by his attorneys, LEVY PHILLIPS & KONIGSBERG, LLP,  for his Complaint,

respectfully alleges as follows:

        1.        Plaintiff repeats and re-alleges New York Asbestos Litigation Standard Complaint

00117267.WPD                                    -2-

No. 1 as if fully incorporated herein.

2.    Plaintiff is a citizen of the State of New York.

3.    Plaintiff, Warren W. Taveniere has been diagnosed with malignant mesothelioma and meets the minimum requirement for activation into the active docket pursuant to the Case Management Order governing these actions.

4.    The following allegations are applicable only as to defendants American Export Lines and Moore-McCormack Lines.

5.    Plaintiff Warren W. Taveniere was a merchant marine serving aboard various seafaring vessels from 1953 to approximately 1957.

6.    As a Junior 3rd Assistant Engineer during the course of his career, plaintiff labored and was employed in the engine departments and machinery spaces aboard vessels mentioned herein.

7.    At all relevant times, while in the employ of each of the employer defendants as described more fully below, plaintiff was exposed to asbestos and asbestos-containing materials.

8.    At all relevant times, while present on the vessels owned by each of the shipowner defendants as described more fully below, plaintiff was exposed to asbestos and asbestos-containing materials.

9.    At all relevant times, while present on the vessels operated by each of the operator defendants as described more fully below plaintiff was exposed to asbestos and asbestos-containing materials.

10.    As a result of his exposure aboard each of defendants' vessels and/or while in each

00117267.WPD

-3-

of the defendants' employ, plaintiff has been caused to be injured by the exposure(s) as aforesaid.

11.    As a result of such exposure aboard each of the defendants' vessels, or while in each of the defendants' employ , plaintiff has been caused to suffer severe pain and discomfort; loss of and shortness of breath; stress has been placed on his cardiovascular and other bodily systems; he has been in the past and will in the future suffer mental, physical, and emotional trauma; he has in the past and will in the future suffer from lung cancer.

## JURISDICTIONAL ALLEGATIONS

1.    Jurisdiction over MOORE-McCORMACK LINES is pursuant to the Jones Act 46 U.S.C. App. § 688, the general maritime law under 28 U.S.C. § 1333.

2.    Jurisdiction over AMERICAN EXPORT LINES, is pursuant to the Jones Act 46 U.S.C. App. § 688, the general maritime law under 28 U.S.C. § 1333.

3.    Jurisdiction over ROBINS LINES, is pursuant to the Jones Act 46 U.S.C. App. § 688, the general maritime law under 28 U.S.C. § 1333.

## SPECIFIC ALLEGATIONS PERTAINING TO DEFENDANT
## MOORE-McCORMACK LINES

1.    Plaintiff worked as a Junior 3rd Assistant Engineer and as a member of the crew aboard various ships owned and/or operated by defendant MOORE McCORMACK LINES at various time periods including portions of the years 1953.

00117267.WPD                                        -4-

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

2.    MOORE-McCORMACK LINES was also plaintiff's employer during various time periods including portions of the year 1953.

3.    During plaintiff's engagement aboard the Mormac Surf vessel, and/or while in the employ of MOORE- McCORMACK LINES, plaintiff was exposed to asbestos and was caused injury thereby, and as previously described.

4.    Said exposure and resulting injury was caused by defendant's negligence and/or the unseaworthiness of defendant's vessels.

5.    As a result of said exposure plaintiff has been damaged as hereinafter and hereinbefore more fully described.

## SPECIFIC ALLEGATIONS PERTAINING TO DEFENDANT
## AMERICAN EXPORT LINES

1.    Plaintiff worked as a Junior 3rd Assistant Engineer and as a member of the crew aboard various ships owned and/or operated by defendant AMERICAN EXPORT LINES at various time periods including portions of the years 1953 through 1954 and 1956-1957.

2.    AMERICAN EXPORT LINES was also plaintiff's employer during various time periods including portions of the years 1953 and through 1957.

3.    During plaintiff's engagement aboard the S.S. Constitution and S.S. Explorer vessels, and/or while in the employ of AMERICAN EXPORT LINES, plaintiff was exposed to asbestos and was caused injury thereby, and as previously described.

4.    Said exposure and resulting injury was caused by defendant's negligence and/or the

00117267.WPD                              -5-

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022

unseaworthiness of defendant's vessels.

5.    As a result of said exposure plaintiff has been damaged as hereinafter and hereinbefore more fully described.

## SPECIFIC ALLEGATIONS PERTAINING TO DEFENDANT

## ROBINS LINES

1.    Plaintiff worked as a seaman and as a member of the crew aboard various ships owned and/or operated by defendant ROBINS LINES at various time periods including portions of the year 1953.

2.    ROBBINS LINES was also plaintiff's employer during various time periods including portions of the year 1953.

3.    During plaintiff's engagement aboard the S.S. Robin Good Fellow vessel, and/or while in the employ of ROBBINS LINES, plaintiff was exposed to asbestos and was caused injury thereby, and as previously described.

4.    Said exposure and resulting injury was caused by defendant's negligence and/or the unseaworthiness of defendant's vessels.

5.    As a result of said exposure plaintiff has been damaged as hereinafter and hereinbefore more fully described.

## COMPENSATORY DAMAGE CLAIM

1.    By reason of the foregoing negligence of the defendants and the unseaworthiness of their respective vessels, if applicable, plaintiff claims compensatory damages against them jointly and severally in the amount of $10,000,000.00.

00117267.WPD                                    -6-

### PUNITIVE DAMAGE CLAIM

2.     Plaintiff's injuries and thereby damages to plaintiff as aforesaid were caused by the willful and wanton conduct of defendants, jointly and severally and by their gross negligence.

WHEREFORE, plaintiff claims of the defendants jointly and severally Ten Million Dollars in compensatory damages and Ten Million Dollars in punitive damages, costs fees and for such other relief as to the Court seems just and proper.

Dated:     New York, New York
           May 19, 2008

LEVY PHILLIPS & KONIGSBERG, L.L.P.

By:   Audrey P. Raphael

800 Third Avenue, 13th Floor
New York, NY 10022
(212) 605-6200
*Attorneys for Plaintiff*

00117267.WPD

-7-

LEVY PHILLIPS &
KONIGSBERG, L.L.P.
800 THIRD AVENUE
NEW YORK, N.Y. 10022





UNITED STATES POSTAGE
02 1M
0004256854
$06.24⁰
MAY 22 2008
MAILED FROM ZIP CODE 10016
PITNEY BOWES

CERTIFIED MAIL

7007 0710 0002 0786 5916

*Law Offices*
LEVY PHILLIPS & KONIGSBERG, LLP
800 THIRD AVENUE
New York, N.Y. 10022

FOSTER WHEELER
Perryville Corporate Park
P.O. Box 4000
Clinton, NJ 08809

0008473.WPD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
————————————————————————X

WARREN W. TAVENIERE,

                    Plaintiff,

          - against -

AMERICAN EXPORT LINES, et al.,

                    Defendants.
————————————————————————X

STATEMENT OF SERVICE BY MAIL AND
ACKNOWLEDGMENT OF RECEIPT BY
MAIL OF SUMMONS AND COMPLAINT

INDEX NO. 08/107016
DOF: 5/20/08

FOSTER WHEELER
Perryville Corporate Park
P.O. Box 4000
Clinton, NJ 08809

The enclosed Summons and Complaint are served pursuant to § 312-a of the Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and complete the Acknowledgment part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

If you have received a Complaint with this statement, the return of this statement and Acknowledgment does not relieve you of the necessity to answer the Complaint. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the Acknowledgment.

I declare, under penalty of perjury, that this Statement of Service by Mail and Acknowledge of Receipt by Mail of Summons and Complaint will have been mailed on May 22, 2008.

_____          _____
Signature                                                      May 22, 2008
Levy Phillips & Konigsberg, 800 Third Avenue, New York, New York 10022          Date of Signature
Address

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I received a Summons and Complaint in the above-captioned matter at [INSERT ADDRESS] _____
Corporate Park, Clinton, N.J. 08809-4000.

PLEASE CHECK ONE OF THE FOLLOWING;

IF 2 IS CHECKED, COMPLETE AS INDICATED

1. ☑   I am not in the military service.
2. ☐   I am in military service and my rank, serial number and branch of service are as follows:

Rank:_____          Branch of Service:_____

Serial Number:_____

Date: **05/28/08**          TO BE COMPLETED REGARDLESS OF MILIARY STATUS:
      (Date this Acknowledgment is executed)

I affirm the above as true under penalty of perjury.

_____
Signature

_____
Print Name

_____
Name of Defendant for which acting

_____
Position with Defendant for which acting (i.e., officer, attorney, etc.)
**Please Complete All Blanks Including Dates**

00117911.WPD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

WARREN W. TAVENIERE,

           Plaintiff,

    - against -

AMERICAN EXPORT LINES, et al.,

           Defendants.

-------------------------------------------------------------X

**STATEMENT OF SERVICE BY MAIL AND ACKNOWLEDGMENT OF RECEIPT BY MAIL OF SUMMONS AND COMPLAINT**

INDEX NO. 08/107016
DOF: 5/20/08

FOSTER WHEELER
Perryville Corporate Park
P.O. Box 4000
Clinton, NJ 08809

    The enclosed Summons and Complaint are served pursuant to § 312-a of the Civil Practice Law and Rules.

    To avoid being charged with the expense of service upon you, you must sign, date and complete the Acknowledgment part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

    If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

    If you have received a Complaint with this statement, the return of this statement and Acknowledgment does not relieve you of the necessity to answer the Complaint. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult an attorney, you should do so as soon as possible before the twenty (20) days expire.

    If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

    It is a crime to forge a signature or to make a false entry on this statement or on the Acknowledgment.

    I declare, under penalty of perjury, that this Statement of Service by Mail and Acknowledge of Receipt by Mail of Summons and Complaint will have been mailed on May 22, 2008.

_Marjorie Milano_
Signature

_____May 22, 2008_____
Date of Signature

Levy Phillips & Konigsberg, 800 Third Avenue, New York, New York 10022
Address

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I received a Summons and Complaint in the above-captioned matter at [INSERT ADDRESS]_____

PLEASE CHECK ONE OF THE FOLLOWING;

        IF 2 IS CHECKED, COMPLETE AS INDICATED

    1. ☐    I am not in the military service.

    2. ☐    I am in military service and my rank, serial number and branch of service are as follows:

Rank:_____    Branch of Service:_____

Serial Number:_____

        TO BE COMPLETED REGARDLESS OF MILIARY STATUS:

Date: _____
    (Date this Acknowledgment is executed)

I affirm the above as true under penalty of perjury.

_____
Signature

_____
Print Name

_____
Name of Defendant for which acting

_____
Position with Defendant for which acting (i.e., officer, attorney, etc.)
**Please Complete All Blanks Including Dates**

00117911.WPD

# LEVY, PHILLIPS & KONIGSBERG, LLP
## ATTORNEYS AT LAW
### 800 THIRD AVENUE
### NEW YORK, N. Y. 10022

(212) 605-6200
FAX: (212) 605-6290
E-MAIL: lpk@lpklaw.com

NEW JERSEY OFFICE
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD
LAWRENCEVILLE, NJ 08648
TELEPHONE: (609) 720-0400
FAX: (609) 720-0457

GOSHEN OFFICE
42 PARK PLACE
GOSHEN, NEW YORK 10924

TELEPHONE: (845) 294-2002

May 22, 2008

To:    All Counsel

### Re: Warren Taveniere Interrogatories

Dear Counsel:

Enclosed please find plaintiff **Plaintiff's Answers To Defendants' Fourth Amended Standard Set Of Interrogatories on behalf of Warren Taveniere.**

Authorizations have been provided to RecordTrak.

Thank you.

Very truly yours,

LEVY PHILLIPS & KONIGSBERG, LLP

By: Megan E. Sullivan
*Paralegal*

*Enclosure*

00117866.WPD

SUPREME COURT OF THE STATE OF NEW YORK
ALL COUNTIES WITHIN NEW YORK CITY
------------------------------------------------------------------X
In Re:        NEW YORK CITY                          NYCAL
              ASBESTOS LITIGATION
------------------------------------------------------------------X
This Document Applies to:                            **PLAINTIFF'S ANSWERS TO**
                                                     **DEFENDANTS' FOURTH**
                                                     **AMENDED STANDARD SET OF**
**WARREN TAVENIERE**      **Index No.: 08/107016**   **INTERROGATORIES AND**
                                                     **REQUEST FOR PRODUCTION**
                                                     **OF DOCUMENTS**
------------------------------------------------------------ X

00116964.WPD

## **GENERAL OBJECTION**

Plaintiff objects to these discovery requests to the extent they seek information

protected as attorney-client privilege and/or work product doctrine.  Finally, plaintiff objects to

any discovery request that may be construed as requesting production of Proof of Claim Forms

(POCs) and/or other documents reflecting communications between plaintiff and any settlement

trust or any other entity made solely for purposes of settlement. See CPLR § 4547.

## **INTERROGATORIES**

1.    State the following:

    (a)    your full name, and all other names by which you have been known;

    (b)    age, and date and place of birth;

    (c)    whether you were an adopted child;

    (d)    present marital status, date of current marriage, spouse's maiden name, dates of any prior marriages and the names of any prior spouses, if applicable;

    (e)    present home address; and

    (f)    social security number.


A.1.    (a)    Warren Taveniere

    (b)    75; August 26, 1932; Jersey City, NJ

    (c)    No

    (d)    Widower; Barbara Robinson, 1958

    (e)    59 Ward Place, Fishkill, NY 12524

    (f)    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.

00116964.WPD

3

2.    State the following with regard to your father and mother:

    (a)    names;

    (b)    current address (if deceased, state last known address);

    (c)    the current condition of each one's health, including any specific medical problems.  If either of your parents are deceased, please state for each deceased parent:

        i.    specific physical problems;

        ii.    date and place of death;

        iii.    age and cause of death for each parent.


A.2.    (a)    Mother: Alyce Taveniere

        Father: Warren Taveniere

    (b)    Mother: Deceased;

        Father: Deceased;

    (c)    Mother: Deceased;

        (i)    High blood pressure

        (ii)    10/1/1991; Utica, NY

        (iii)    Approximately 82; Age

Father:

    (i)    Bronchiogenic carcinoma, Myocardio fibrosis, Cardiofibrosis

    (ii)    January 18, 1967; Yonkers, NY

    (iii)    Approximately 85; See above.

3.    State the following with regard to each of your children:

    (a)    full name;

    (b)    the date of birth;

    (c)    sex;

    (d)    current address (if deceased, state the last known address);

    (e)    social security number;

    (f)    whether birth child or adopted child;

    (g)    current state of each one's health.  If any of your children are deceased, state for each deceased child:

    i.    specific physical problems;

    ii.    date and place of death; and

    iii.    age and cause of death for each child.

A.3.I.   (a)    Eileen O'Bryan

         (b)    August 1959

         (c)    Female

         (d)    4788 Edgeworth Drive, Manilus, NY 13104

         (e)    To be provided

         (f)    Natural

         (g)    Good


A.3.II. (a)    Susan Giarrusso

         (b)    April 10, 1961

         (c)    Female

         (d)    677 Shadowlawn Drive, Westfield, NJ 07090

         (e)    To be provided

         (f)    Natural

         (g)    Good


A.3.III.(a)    Warren Walter Taveniere, Jr.

         (b)    March 13, 1963

         (c)    Male

         (d)    9609 East Valley Ranch Parkway, Apt. 1097, Irving, TX 75063

00116964.WPD                          6

    (e)    To be provided

    (f)    Natural

    (g)    Good.


4. State the complete address of all places you have resided since birth giving the inclusive dates of residence for each place named and as to each state:

    (a)    fuel use for heating and cooking;

    (b)    significant home improvements (e.g., additions, reinsulation, re-wiring, etc.);

    (c)    number of family units co-occupying said structure.


A.4.I.    Exact Address Unknown
Jersey City, NJ
Approximately 1932-1933

    (a)    Heating: Unknown at this time

          Cooking: Unknown at this time

    (b)    Unknown at this time

    (c)    Unknown at this time


A.4.II.    130 Seminary Avenue
Yonkers, NY
Approximately late 1930's

(a)     Heating: Unknown at this time

Cooking: Unknown at this time

(b)     Unknown at this time

(c)     Unknown at this time

A.4.III.     76 Hamilton Avenue
Yonkers, NY
Approximately 1941-1943

(a)     Heating: Unknown at this time

Cooking: Unknown at this time

(b)     Unknown at this time

(c)     6-story apartment building

A.4.IV.     277 Riverdale Avenue
Yonkers, NY
Approximately mid 1940's

(a)     Heating: Unknown at this time

Cooking: Unknown at this time

(b)     Unknown at this time

(c)     Apartment

A.4.V.     214 Woodworth Avenue
Yonkers, NY

00116964.WPD                                    8

Approximately 1952-1958

    (a)    Heating: Unknown at this time

            Cooking: Unknown at this time

    (b)    None

    (c)    3 family home

A.4.VI.    42 Park Avenue
Yonkers, NY
Approximately 1958-1961

    (a)    Heating: Unknown at this time

            Cooking: Unknown at this time

    (b)    None

    (c)    Apartment building

A.4.VII.    Bradford Court
Syracuse, NY
Approximately 1961 – 1964

    (a)    Heating: Unknown at this time

            Cooking: Unknown at this time

    (b)    None

    ( c)    Apartment complex

A.4.VIII.   Coye Road
            Jamesville, NY
            Approximately 1963 – 1966

    (a)   Heating: Gas

       Cooking: Gas

    (b)   None

    ( c )  Single family home

A.4.IX.   5433 North 83rd Street
          Milwaukee, WI
          Approximately 1966-1967

    (a)   Heating: Unknown at this time

       Cooking: Unknown at this time

    (b)   None to plaintiff's knowledge

    ( c )  Apartment

A.4.X.   Harwood Avenue
         Syracuse, NY
         Approximately 1967-1969

    (a)   Heating: Unknown at this time

       Cooking: Unknown at this time

    (b)   None

    ( c )  Single family home

A.4.XI.  Beatty Street
Syracuse, NY
Approximately 1967-1969

    (a)   Heating: To be provided

            Cooking: To be provided

    (b)   None

    ( c)   Single family home

A.4.XII.  523 Cedarbrook Crescent
Utica, NY
Approximately 1969 -- 2002

    (a)   Heating: Gas

            Cooking: Electric

    (b)   Minor renovations. No known asbestos exposure.

    ( c)   Single family home

A.4.XIII.  59 Ward Place
Fishkill, NY 12524
2002 – present

    (a)   Heating: Oil

            Cooking: Propane Gas

    (b)   None

( c )    Single family home.

5.    For every physician or other health care provider who ever tested, treated, consulted with or examined you up to and including the present date, for any reason whatsoever, please state the following separately as to each:

(a)    name and address of physician or health care provider and, if ongoing, the approximate frequency of said treatment and services;

(b)    date(s) of test, examination and/or treatment;

(c)    symptoms complained of at the time, if any;

(d)    any diagnosis made;

(e)    treatment or examination given and reason for treatment or examination; and

(f)    any drugs or medications prescribed.

A.5.    At the present time, although it is possible that plaintiff consulted other doctors, nurses and health care providers, plaintiff recalls the following names, dates and treatments:

A.5.I.    (a)    Dr. Farber
Slocum Dixon Medical Group
1729 Burrstone Road
New Hartford, NY

00116964.WPD                                    12

St. Luke's Hospital
Burrstone Road Medical Office
1724 Burrstone Road
New Hartford, NY 13413

(b)    Approximately 2001-2002.

(c)    See medical records (primary care physician)

(d)    See medical records

(e)    See medical records (primary care physician)

(f)    See medical records.

A.5.II. (a)    Dr. Gerringer
Mid-Hudson Medical Group
10 Cranberry Drive
Hopewell Junction, NY 12533

(b)    Approximately 2002 – present

(c)    See medical records (primary care physician)

(d)    See  medical records.

(e)    See medical records (primary care physician)

(f)    See medical records.

A.5.III.    (a)    Dr. William Bollengier

1 Columbia Street, Suite 302

Poughkeepsie, NY 12601

    (b)    Approximately 2003 – present

    (c)    See medical records

    (d)    See  medical records

    (e)    See medical records (thoracic surgeon)

    (f)    See medical records.

6.    For every hospital, clinic or health care institution in which you have ever been admitted, treated, tested, or examined, whether as an "in-patient" or as an "out- patient," please state the following for each such visit:

    (a)    name and address of the facility;

    (b)    dates and description of test, treatment, examination or hospitalization and, if ongoing, the approximate frequency of said treatment and services; and

    (c)    reason for visit to the facility.

A.6.    At the present time, although it is possible that plaintiff may have been treated or examined in other hospitals and health institutions, plaintiff recalls the following:

00116964.WPD            14

A.6.I.  (a)  Vassar Brothers Hospital
             45 Reade Place
             Poughkeepsie, NY 12601

        (b)  Approximately 2003, 2005, 2008.

        (c)  See medical records.


A.6.II.  (a)  Dutchess Radiology Associates
              1 Columbia Street, 1st Floor
              Poughkeepsie, NY 12601

         (b)  See medical records

         (c)  See medical records.


A.6.III.  (a)  Mid-Hudson Medical Group (Dr. Gerringer)
               30 Columbia Street
               Poughkeepsie, NY 12601

          (b)  See medical records

          (c)  See medical records


7.      State each of your asbestos-related injuries and/or diseases, describe the nature of those symptoms that you contend are related to your asbestos-related condition(s), and state the date when you first experienced each such symptom and the date of diagnosis and the name of any diagnosing physician and, if different, indicate the date you first became aware of the diagnosis.


00116964.WPD                          15

A.7.    Plaintiff sustained a number of asbestos-related injuries, including, but not limited to lung cancer, pain and suffering, mental and emotional distress, shortness of breath, coughing, wheezing, respiratory discomfort and pain, and related sequelae. As indicated in plaintiff's medical records, at various and numerous times, plaintiff experienced a variety of different and differing symptoms related to his injuries, which were numerous and frequent. At this time, plaintiff is unable to state the precise date of the various symptoms might have first occurred. See medical records for date of diagnosis and name of diagnosing physician.

8.    Describe any pain, incapacity, inability to lead a normal life, inability to work, or disability (including retirement) alleged to have resulted from your medical conditions, including the date and basis therefore.

A.8.    Plaintiff experienced shortness of breath, coughing, wheezing, weight loss, and respiratory discomfort and pain, among other things. Plaintiff's asbestos-related condition has totally disrupted his life, totally limited him in his everyday activities, interfered with his living a normal life, caused him fear, emotional distress, pain, suffering, discomfort, and inconvenience. His ability to do any activities that require any physical exertion such as household chores (i.e., maintaining swimming pool, lawn mowing, leave raking, snow shoveling) has been extensively diminished.

9.    Have you ever had any biopsies or tissue samples taken?  If so, please state for each such procedure:

    (a)    the name of the physician performing such procedure;

    (b)    the address where such procedure was performed;

    (c)    the date when such procedure was performed; and

    (d)    the results, conclusions, and/or diagnosis arising from such procedure.

A.9.    Yes

    (a)    Dr. Bollengier

    (b)    Vassar Brothers Hospital

    (c)    March 24, 2008

    (d)    See medical records.

10.    Have you ever had any chest x-rays, CT Scans and/or pulmonary function tests? If so, state:

    (a)    the dates and places;

    (b)    the reasons;

    (c)    the results and/or diagnosis resulting therefrom;

    (d)    the location of all chest X-ray films and CT Scans; and

    (e)    provide appropriate authorization to obtain all X-rays, CT Scans and

        pulmonary function tests.

A.10.I.    (a)    Plaintiff has had x-rays taken at Dutchess Radiology Associates and Mid-Hudson Medical Group, but medical records may or may not reflect others.

(b)    See medical records.

(c)    See medical records.

(d)    Chest x-ray films and CT Scans should be in the possession of the respective doctors and hospitals.

(e)    Authorizations have been provided to RecordTrak.

11.    Have you ever been exposed to, used, inhaled or ingested any of the following substances on a regular basis or at work.  If so, state the date(s), place(s), and circumstances thereof.

(a)    acids

(b)    aluminum

(c)    arsenic

(d)    barium

(e)    beryllium

(f)    butanol

(g)    cadmium

(h)    carborundum

(i)    chloroethylene

00116964.WPD                                    18

(j)     chlorine

(k)     chromate

(l)     chromite

(m)     chromium

(n)     coal dust (coal)

(o)     coal tar

(p)     cotton dust

(q)     epoxy

(r)     ethanol

(s)     grinding dust

(t)     iron

(u)     isocyanates

(v)     isopropanol

(w)     lead

(x)     live chickens

(y)     manganese

(z)     nickel

(aa)    nitrogen dioxide

(ab)    nuclear radiation

00116964.WPD                              19

(ac)    ozone

(ad)    petroleum distillates

(ae)    phosgene

(af)    radiation

(ag)    silica

(ah)    titanium

(ai)    toluene

(aj)    welding smoke or fumes

(ak)    zylene

(al)    zinc.

A.11.  Plaintiff does not recall being exposed to the above substances on a regular basis.

12.    Do you use or have you ever used cigarettes, cigars, pipes, smokeless tobacco, or any other tobacco substance, from birth to the present time?  If so, state the following:

(a)    the brand and type of tobacco product(s) used (e.g., filter, non-filter, chewing tobacco);

(b)    the dates during which you used each such product;

(c)    the amount of the product used per day, during each period of time (e.g., 2 packs of cigarettes per day);

(d)    whether you have ever been told by a physician that you are or were

suffering from any disease or illness caused by or contributed to by

tobacco; and

(e)    whether you were ever advised by any physician or any other person that

use of tobacco products could adversely affect your health and whether

you were ever advised to stop using tobacco products, and if so, identify

each physician or person who gave you any such advice, the dates on which

the advice was given, and state exactly what, if anything, you did in

response to that advice.

A.12.  Yes.

(a)    Pall Mall unfiltered cigarettes; Chesterfield unfiltered cigarettes; Lucky

Strikes unfiltered cigarettes; Wings unfiltered cigarettes; Malboro filtered

cigarettes; Camel menthol filtered cigarettes

(b)    Approximately 1948 – 2008

(c)    Approximately 1.5 – 2 packs per day

(d)    Yes

(e)    Yes, by Drs. Farber and Gerringer.  Plaintiff attempted to quit numerous

times, using several methods including Wellbutrin, The Patch, Hypnosis, and Acupuncture.

13.    For each spouse and member of your household, from your birth to the present time, state whether they use or have ever used cigarettes, cigars, pipes, smokeless tobacco, or any other tobacco substance, and if so, state the following:

(a)    the brand and type of tobacco product(s) used (e.g., filter, non-filter, chewing tobacco); and

(b)    the dates during which they used each such product.

A.13.I.    Barbara Taveniere (wife, deceased)

(a)    Tarrytown filtered cigarettes

(b)    Approximately 1950's – 1987

A.13.II.    Alyce Taveniere (mother)

(a)    Brands unknown

(b)    Exact dates unknown, quit approximately late 1980's

A.13.III.    Warren Taveniere (father)

(a)    Pall Mall

(b)    Exact dates unknown

A.13.IV.    Walter Robinson (father-in-law)

(a)    Brands unknown

(b)    Approximately 1980's

00116964.WPD                                          22

A.13.V.    Noreen Frey (Partner)

    (a)    Carlton menthol 100's filtered cigarettes

    (b)    Approximately 1950's – present


14.    Do you presently consume or have you in the past consumed alcoholic beverages. If so, state the following:

    (a)    the type of alcoholic beverages consumed;

    (b)    the dates during which you consumed each such alcoholic beverage;

    (c)    the amount of such beverage you consumed each day; and

    (d)    whether you have ever been treated for any illness or disease related to your consumption of alcoholic beverages.


A.14.    Yes

    (a-d)    Plaintiff drinks alcohol occasionally on social occasions. He has never been treated for an alcohol-related disease or illness.

15.    Have you ever been a member of the Armed Forces of the United States? If so, state the following:

    (a)    the branch of the service, serial number, and highest rank held;

    (b)    the beginning and ending dates of your military service;

    (c)    the type of discharge that you received; and

     (d)    whether you sustained any injuries or incurred any illness during military

         service.

     (e)    if you received a medical discharge, attach a copy hereto and set forth the

         medical reasons.

A. 15.  Yes.

     (a)    U.S. Merchant Marines; To be provided; Junior 3rd Assistant Engineer

     (b)    February 1952 - 1957

     ( c)    Honorable

     (d)    No

     (e)    N/A.

16.    As to each and every employer (including military service) you have had from the time you were first employed to the present, set forth the following:

(Use attached Chart A)

Include on the Chart all employers where you have worked, and all job sites, regardless of whether or not you believe you were exposed to asbestos during the employment. Also, include the source of any product identification information provided on Chart A.

A. 16.  See Chart A.

17.    Please state the following with respect to each asbestos-containing product

identified on Chart A:

    (a)    the color, dimensions, shape, form, texture, weight, appearance and

         flexibility of each product;

    (b)    the appearance of the package or container indicating the manner of

         packaging, size, dimensions, color and weight; and

    (c)    the name, logo, label, numerical and alphabetical markings and other

         markings or words including warnings on the product and package or

         container.

A. 17.  (a)    The asbestos-containing products identified in Chart A were varied in

color, dimension, shape, form, texture, weight, appearance and/or flexibility.

Further information may be provided in response to questioning at deposition.

    (b)    To the extent that the asbestos-containing products identified in Chart A

came packaged, such packaging varied in appearance, size, dimension, color

and/or weight. Further information may be provided in response to questioning at

deposition.

    (c)    To the extent that the asbestos-containing products identified in Chart A

came packaged, such packaging may have contained various markings including

the manufacturer or trade name of the product. In addition, the product itself may

have also contained various markings. Plaintiff never personally observed any

warnings about asbestos on product packaging or on the asbestos-containing

products themselves.  Further information may be provided in response to

questioning at deposition.

18.  If you have retired from your employment, set forth the following:

    (a)  whether said retirement was voluntary or involuntary;

    (b)  the effective date of said retirement;

    (c)  the name of your employer at the time of retirement;

    (d)  the reason for your retirement;

    (e)  whether your retirement was related to any claimed asbestos-related injury;
        and

    (f)  the amount of pension and/or retirement benefits you are receiving or
        entitled to receive.

A.18.  (a)  Voluntary

    (b)  1997

    (c)  General Electric Company

    (d)  Retirement age

    (e)  No

    (f)  Approximately $740/month.

19.    State whether you were exposed (either directly, through a co-worker or otherwise), to any Bankrupt Entity's asbestos-containing materials, or products either mined or manufactured, sold, or distributed by a Bankrupt Entity. If so, state the following:

    (a)    As to each and every employer (including military service) you have had from the time you were first employed to the present, set forth the following, concerning Bankrupt Entities' products only:

        i.    Name of Employer;

        ii.    Dates of employment;

        iii.    Asbestos-related job site and address where Bankrupt Entity's products were being used;

        iv.    Dates you were at the job site;

        v.    Job duties at the particular job site;

        vi.    Bankrupt Entity's asbestos-containing materials or products to which you were exposed.

        vii.    Other companies using Bankrupt Entity's asbestos-containing materials or products at the jobsite; and

        viii.    Whether you received any warnings with respect to the use of said product and the nature of those warnings.

    (b)    If you were exposed to, used, ingested or inhaled any Bankrupt Entity's Asbestos-Containing Products at any time other than in the scope of your

employment, state for each such exposure:

    i.     the date, location and circumstances; and

    ii.    the type of product and the name of the manufacturer, distributor, and miner.

A.19.  Subject to the foregoing general objection, plaintiff responds as follows:

    See plaintiff's attached "Chart A"

20.    If you were exposed to, used, ingested or inhaled asbestos or asbestos-containing products at any time other than in the scope of your employment, state for each such exposure:

    (a)    the date, location and circumstances; and

    (b)    the type of product and the name of the manufacturer, distributor, and miner.

A.20.  Not applicable.

21.    Have you ever been a member of any labor union? If so, state:

    (a)    the name and address of each local, national and international labor union;

    (b)    the inclusive dates of your membership; and

    (c)    any positions you have held with each such labor union, and the dates during which you held such positions.

A.21.  Yes.

A.21.I       (a)    Bricklayers Masons & Plasterers Union, Yonkers Local

             (b)    Approximately 1950-1955

             (c)    None

A.21.II.     (a)    International Union of Operating Engineers

             (b)    Approximately 1957-1960

             ( c)   None

A.21.III.    (a)    United Mine Workers (Merchant Marine Officers Union)

             (b)    Approximately 1956 – 1957

             ( c)   None.

22.    State whether you have ever seen or received any information, instruction, direction, warning, or directive, from any source whatsoever, concerning alleged dangers of exposure to asbestos or asbestos-containing products, and if so, identify:

             (a)    each such warning, directive, notification, direction, instruction, or information;

             (b)    the means by which such was given to you;

             (c)    the source and the date on which it was received by you; and

             (d)    your response or reaction, including any complaints made or changes in work habits.

A.22.  Plaintiff was advised about the dangers of asbestos in approximately the late

1980's/early 1990's and stayed away from asbestos thereafter.


23.  State whether you had available for use during any period of your employment, respirators or masks or other dust inhalation inhibitor, or protective gear and, if so, state the following:

(a)  the period of time during which said items were available;

(b)  what instructions were given with regard to the use of each of said items;

(c)  whether you used said items and the dates of your use;

(d)  whether you ever requested said items, and, if so, when, where and to whom the request was made, and the response to the request.

A.23.  See A.22. above.


24.  If you are making a claim for loss of earnings or impairment of earning power because of your medical conditions, state the following:

(a)  date of commencement of any loss or impairment;

(b)  the name and address of your employer, your job title and your monthly or weekly rate of pay at the time of the alleged commencement of any loss or impairment;

(c)  if you had more than one employer during the three year period prior to the

date of the commencement of any loss or impairment, as indicated on

Chart A, provide your monthly or weekly rate of pay and inclusive dates of

such employment during the three year period;

(d)    your total earnings for the period of three years prior to the

commencement of any loss or impairment;

(e)    the inclusive dates during which you allege that you were unable to work

as a result of any loss or impairment and the total amount of pay you claim

you lost  because of this absence;

(f)    the date on which any loss or impairment ended; and

(g)    your monthly or weekly rate of pay which you have received, from the date

of any loss or impairment ended through the present time.

A.24.  Plaintiff does not assert a claim for loss earnings.


25.    Do you claim damages for loss of consortium, society, affection, services, or

sexual enjoyment?  If so, please set forth in complete detail all facts on which this claim is based,

including a complete description of the loss suffered.

A.25.  No.

26.    For each person who is or was partially or totally dependent upon you for financial support and assistance during the last ten years, state:

      (a)    the name, address, sex, age and relationship; and

      (b)    the amounts you contributed during the last ten years for support and assistance.

A.26.    (a)    Noreen Frey; 59 Ward Place, Fishkill, NY 12524; 71; Partner;

      (b)    Partial support.

27.    State, in the form of an itemized list, all special damages alleged in this lawsuit including, but not limited to, hospital charges, medical charges, medicines, lost wages, etc., naming the person or organization to whom each item of expense was paid or is due, and, if paid, by whom each item of expense was paid.

A.27.    Expenses are ongoing; to be provided.

28.    Identify and give the substance of all written statements, recordings, or videotapes which relate to the facts of this lawsuit and the damages you claim given by plaintiff or any witness (provided such information is in plaintiff's possession, custody or control and/or such statements, recordings or videotapes are not protected by the attorney-client privilege) in the above-captioned matter.

A. 28.    None.

29.     Have you ever made any claim for, or received any, health or accident insurance benefits, social security benefits, state or federal benefits for disabilities, workers' compensation benefits, veterans' benefits, tort claims or suits, Federal Employers Liability Act claims or suits, Longshoremen and Harbor Workers Act claims or suits, unemployment compensation insurance benefits, or early payment from any public or private pensions due to disability or your medical condition?  If so, state the following:

    (a)     the date and place where each such claim was made;

    (b)     the name and nature of the entity with which the claim was made;

    (c)     any identifying number, such as a docket or petition number, for each claim;

    (d)     the defendant, agency, insurer, employer or other entity to or against whom the claim was made and its file number;

    (e)     the nature of the claim;

    (f)     whether you were examined by a physician and if so, the name and address of that physician;

    (g)     the result of such claim, including the amount realized by way of settlement, judgment or award upon the claim;

    (h)     the name and address of any attorney who represented you with regard to such claims; and

    (i)     whether you are presently receiving such benefits.

A.29.    No.

    30.     State the following with regard to your asbestos-related legal action:

    (a)     Did you file an asbestos-related claim in more than one (1) jurisdiction;

    (b)     Identify all of the jurisdiction(s) where an asbestos-related claim has been filed (whether or not these claims have been dismissed or discontinued or otherwise resolved) on your behalf;

    (c)     Did you file your asbestos-related claim(s) under more than one (1) Index Number; and

    (d)     Provide all of the Index Numbers for all of your asbestos-related claim(s), including all multiple Index Numbers for Claims filed in New York County.

A.30.    Subject to the foregoing general objection, plaintiff responds as follows:

    (a)     No.

    (b)     New York County.

    (c)     No.

    (d)     08/107016.

31.    State whether or not you have made, filed, or submitted a Claim Against Bankrupt Entity or received funds in settled from a Bankrupt Entity. If so, for each claim state the following:

(a)     the date and place where each such claim was made;

(b)     the name and nature of the entity with which the claim was made;

(c)     any identifying number, such as a docket or petition number, for each

claim;

(d)     the defendant, agency, insurer, employer or other entity to or against whom

the claim was made and its file number;

(e)     the nature of the claim;

(f)     whether you were examined by a physician and if so, the name and address

of that physician; and

(g)     whether you received any compensation as a result of such claim, but not

the amount.

A.31.     Subject to the foregoing general objection, plaintiff responds as follows:

No.

32.     State whether you have applied to any Bankrupt Entity or Bankruptcy Court to lift

the stay as to your claim or otherwise have attempted to join a Bankrupt Entity to

this action.

A.32     Subject to the foregoing general objection, plaintiff responds as follows:

As of the present time, plaintiff has neither applied to any Bankrupt Entity or

Bankruptcy Court to lift the stay nor otherwise attempted to join a Bankrupt Entity to this

action because any such action would be contrary to federal law which provides that plaintiff is barred from proceeding against any Bankrupt Entities in this action. Further, any such action would force the Bankrupt Estate or Settlement Trust to unnecessarily incur litigation costs, thereby causing an unnecessary drain on trust assets that are designed to benefit asbestos victims.

33.    Have you or your spouse ever been a party to or a witness in any lawsuit, court or administrative proceeding?  If so, please state:

      (a)    whether you or your spouse were a party or witness and if party, whether plaintiff or defendant;

      (b)    the precise name of the lawsuit or proceeding, the court agency in which it was brought and the docket number;

      (c)    the nature of the charges or claims and, if you or your spouse were a witness, the subject matter of the testimony; and

      (d)    the disposition of the case.

A.33.  No.

34.    Have you or your spouse filed a claim seeking compensation for any alleged asbestos-related condition from any entity, including settlement trusts?  Specify "Yes" or "No" only.

00116964.WPD                                            36

A.34.  Other than the present lawsuit, no.

35.     Identify all entities, whether or not parties to this lawsuit, with whom you have

        settled or agreed to settle this lawsuit.

A. 35.  Settlements are ongoing. A list will be provided of all defendants not dismissed by

        Summary Judgement or otherwise immediately prior to trial.

36 ·   Identify all persons, other than your attorneys, who provided you with any

information used in answering these interrogatories, and state the particular information each

person supplied.

A.36.    Myself.

## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to paragraph 19 of the CMO, the defendants request that plaintiffs produce for inspection and copying, the documents and things identified below. The documents and things identified herein shall be produced for inspection and copying at such time as the answers to the interrogatories herein are filed.

You are hereby requested to produce the following documents and things:

1. All documents identified in your answers to these interrogatories.

R.1. Such documents will be produced, to the extent required by the relevant rules.

2. All documents relating to the plaintiff's job qualifications and professional licenses held.

R.2. If any such documents are located in plaintiff's possession, they will be produced.

3. All documents relating to the plaintiff's membership in any labor trade association or professional organization.

R.3. Authorizations have been provided to Recordtrak, 651 Allendale Road, King of Prussia, PA 19406.

4. All documents relating to the plaintiff's military or foreign service, including and not limited to, personnel records, discharge papers, military occupational specialty qualifications, promotions, reductions or disciplinary actions.

R.4. Authorizations have been provided to Recordtrak, 651 Allendale Road, King of Prussia, PA 19406.

5.    All documents relating to any claim or demand ever made by the plaintiff for
      damages, compensation or other benefits allegedly resulting from any illness or
      injury, including but not limited to, Industrial Accident Board records, social
      security disability claim records, federal or state employment compensation claim
      records, social disability records, pension claim record or any other health or
      accident insurance claim records.

R.5.  Not applicable.

6.    All documents in plaintiff's possession, custody or control relating in any way to
      the plaintiff's exposure or possible exposure to asbestos, asbestos-containing
      products and/or asbestos-containing materials.

R.6.  At this time, plaintiff has no such documents in his personal possession.

7.    All documents in plaintiff's possession, custody or control relating in any way to
      the plaintiff's exposure or possible exposure to silica, acids, beryllium, nuclear
      radiation, ammonia, cadmium, chlorine, chromate, phosgene, grinding dust, coal
      dust, cotton dust, nickel, welding smoke or fumes.

R.7.  At this time, plaintiff has no such documents in his personal possession.

8.    All documents, of which you have ever become aware, relating in any way to
      warnings, potential health hazards, instructions or precautions regarding the use or
      handling of, or exposure to, asbestos, asbestos-containing products, and/or
      asbestos-containing materials.

R.8.  At this time, plaintiff has no such documents in his personal possession.

00116964.WPD                                39

9.    All applications prepared or submitted by or on behalf of the plaintiff for life

insurance, medical insurance, health and accident insurance, and/or disability

insurance.

R.9.    At this time, plaintiff has no such documents in his personal possession.

10.    All statements, recorded interviews, films, videotapes, reports, questionnaires,

forms or other documents made, submitted, compiled, prepared or filled out by,

on behalf of, or under the direction of, plaintiff relating in any way to exposure or

alleged exposure to asbestos, asbestos-containing products and/or

asbestos-containing materials or any other issues relating to this lawsuit except

that information prepared by, for, or at the request of plaintiff's counsel must be

identified (including the date made), but need not be produced without an order by

the Court, provided that written or recorded communication between plaintiff and

counsel, made after an attorney-client relationship has been established, and

attorney work product, need not be produced or identified.

R.10.    Objection.    Attorney/client privilege; work product privilege.

11.    All records in plaintiff's possession, custody or control relating to comments,

complaints, suggestions, or proposals made to your employer or your union, by

yourself or by other employees or union members regarding asbestos exposure.

R.11.    At this time, plaintiff has no such documents in his personal possession.

12.    All written, recorded, filmed, transcribed or videotaped statements of all parties

and non-party declarants pertaining to the subject of this lawsuit, except that

information prepared by, for, or at the request of plaintiff's counsel must be

identified (including the date made), but need not be produced without an order by

the Court, provided that written or recorded communication between plaintiff and

counsel made after an attorney-client relationship has been established and

attorney work product need not be produced or identified.

R.12.   Objection. Attorney/client privilege; work product privilege.

13.   All photographs of the plaintiff at work or in work clothes and all photographs of

all products or conditions complained of in the plaintiff's place of employment.

R.13.   At this time, plaintiff has no such photographs in his personal possession.

14.   Copies of all itemized bills covering all the special damages and losses and

expenses claimed in this matter.

R.14.   See A.27. Bills to be provided if located.

15.   Copies of all reports, correspondence and records from any doctor who has

examined the plaintiff, any hospital where the plaintiff has been treated either as

an inpatient or as an outpatient, except for any reports, records, correspondence, or

communications issued by any consulting physicians who have been retained or

specially employed in anticipation of litigation or preparation for trial and who are

not expected to be called as a witness at trial.

R.15.   Medical authorizations have been provided to RecordTrak, 651 Allendale Road,

King of Prussia, PA 19406.

16.   All tissue specimens, tissue slides, and x-ray films and CT scans pertaining to the

plaintiff.

R.16.   See Answer R.15 above.

17.     Copies of plaintiff's income tax returns for the last ten years of plaintiff's

        employment and up to the current year as well as any other documents, including

        economic loss reports, upon which plaintiff relies in support of his claims.  If loss

        of earnings or earning capacity is alleged or claimed to have occurred before the

        current year, include copies of the income tax returns of the plaintiff from ten

        years prior to the claimed loss and up to the current tax year.

R.17.   Authorizations have been provided to RecordTrak, 651 Allendale Road,

        King of Prussia, PA 19406.

18.     Any asbestos and/or asbestos-containing products or product packaging of the

        type to which the plaintiff alleges exposure and which the plaintiff has in his

        possession, custody or control.

R.18.   At this time, plaintiff has no such products in his personal possession.

19.     All photographs, charts, drawing, diagrams or other graphic representations

        depicting work conditions at work sites where the plaintiff claims the plaintiff was

        exposed  to asbestos or asbestos-containing products.

R.19.   To be produced if located.

20.     All invoices, bills, statements and any other writings or records which the plaintiff

        contends evidence the sale of any products containing asbestos to the place of the

        plaintiff's employment at which plaintiff claims that plaintiff was exposed to

00116964.WPD                                42

asbestos. This does not include documents in the possession, custody or control of plaintiff's attorney unless such documents were provided by plaintiff to his/her attorney and are not privileged.

R.20.   At this time, plaintiff has no such documents in his personal possession.

21.     Any written advice, publication, warning, order, directive, requirement, or recommendation, which advised or warned of the possible harmful effects of exposure to or inhalation of asbestos or asbestos-containing products in the products in the possession, custody or control of the plaintiff.

R.21.   Objection. Work product, over-broad, unduly burdensome and irrelevant. Subject to this objection, appropriate exhibit and witness lists will be provided at the appropriate time.

22.     Any accident or incident reports which relate to the facts, circumstances or incidents which form the basis of plaintiff's complaint.

R.22.   At this time, plaintiff has no such documents in his personal possession.

Dated:     New York, New York
           May 21, 2008


                              LEVY PHILLIPS & KONIGSBERG, LLP


                              Audrey P. Raphael, Esq.
                              *Attorneys for Plaintiffs*
                              800 Third Avenue, 13th Floor
                              New York, NY 10022
                              (212) 605-6200


00116964.WPD                          43

# CHART A
# TO BE PROVIDED

44

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK )
          )ss.:
COUNTY OF NEW YORK )

  **MEGAN E. SULLIVAN**, being duly sworn deposes and says she is an employee of Levy Phillips & Konigsberg, L.L.P., the attorneys for the plaintiffs herein. That on the 22nd day of May, 2008 a copy of **PLAINTIFF'S ANSWERS TO DEFENDANTS' FOURTH AMENDED STANDARD SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS** on behalf of Plaintiff <u>**WARREN TAVENEIERE**</u> was mailed postage pre-paid to:

Genevieve MacSteel, Esq.
McGUIREWOODS
1345 Avenue of the Americas, 7th Floor
New York, NY 10105
*Attorneys for American Standard, Inc.*

Nancy McDonald, Esq.
Joseph LaSala, Esq.
MCELROY, DEUTSCH, MULVANY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
*Attorneys for A.O. Smith Water Products Company and Tuthill Energy Systems, Inc.*

Julie Evans, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
150 East 42nd Street
New York, NY 10017
*Attorneys for A.W. Chesterton Co., Inc. and Carrier Corporation*

Kerryann M. Cook, Esq.
Richard E. Leff, Esq.
McGIVNEY & KLUGER, P.C.
80 Broad Street, 23rd Floor
New York, NY 10024
*Attorneys for Aurora Pump Company, Hercules Chemical Company, Inc., TACO, Inc. and The Falk Corporation*

Edward J. Wilbraham, Esq.
WILBRAHAM, LAWLER & BUBA
1818 Market Street
Philadelphia, PA 19103
*Attorneys for Buffalo Pumps, Inc.*

Cori Leavitt, Esq.
William J. Bradley III, Esq.
Robert C. Malaby, Esq.
MALABY & BRADLEY, LLC
150 Broadway, Suite 600
New York, NY 10038
*Attorneys for Cleaver-Brooks Inc., J.H. France Refractories Co. Viacom Inc. and Weil McLain*

00117864.WPD

John Fanning, Esq.
CULLEN & DYKMAN LLP
177 Montague Street
Brooklyn, New York 11201
*Attorneys for Burnham Holdings,*
*Inc., Goulds Pumps Incorporated*
*and Leslie Controls, Inc.*

Judith Yavitz, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
*Attorneys for Certainteed*
*Corporation and Union Carbide*
*Corp.*

Michael Waller, Esq.
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS, LLP
One Newark Center, 10th Floor
Newark, NJ 07102
*Attorneys for Crane Co., Crane*
*Pumps & Systems, Inc. and*
*National U.S. Radiator*

Peter Langenus, Esq.
SCHNADER, HARRISON, SEGAL
& LEWIS
140 Broadway, Suite 3100
New York, NY 10005
*Attorneys for Dunham-Bush, Inc.*

Suzanne Halbardier, Esq.
BARRY McTIERNAN & MOORE
2 Rector Street, 14th Floor
New York, NY 10006
*Attorneys for General Refractories*
*Co. and John Crane Inc.*

William Mueller, Esq.
CLEMENTE MUELLER & TOBIA, P.A.
P.O. Box 1296
Morristown, NJ 07962
*Attorneys for Durabla Manufacturing*

Donald Fay, Esq.
WATERS McPHERSON McNEIL, P.C.
300 Lighting Way
P.O. Box 1560
Secaucus, NJ 07096
*Attorneys for Elliott Turbomachinery Co.*

John A. Turlik, Esq.
Ann Fenno, Esq.
Dave Weinberg, Esq.
SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD.
830 Third Avenue, Suite 400
New York, NY 10022
*Attorneys for Fairbanks Morse Pump*
*Corp., Garlock Sealing Technologies,*
*LLC, Gardner Denver, Inc. and The*
*Anchor Packing Company*

Michael A. Tanenbaum, Esq.
Diane Pompei, Esq.
SEDGWICK, DETERT, MORAN &
ARNOLD LLP
Three Gateway Center, 12th Floor
Newark, NJ 07102
*Attorneys for Foster Wheeler Energy*
*Corp.*

Peter Stasz, Esq.
47 Westfield Industrial Park
Westfield, MA 01085
***Attorneys for HB Smith Company Incorporated***

Jennifer Darger, Esq.
DARGER & ERRANTE, LLP
116 E. 27th Street, 12th Floor
New York, NY 10016
***Attorneys for Hopeman Brothers, Inc. and Lennox Industries, Inc.***

Joseph Colao, Esq.
LEADER & BERKON
630 Third Avenue, 17th Floor
New York, NY 10017
***Attorneys for IMO Industries, Inc. and Warren Pumps, Inc.***

Lisa M. Pascarella, Esq.
PEHLIVAN, BRAATEN &
PASCARELLA
Paytner's Ridge Office Park
2430 Route 34
Manasquan, NJ 08736
***Attorneys for Ingersoll-Rand Company and Rheem- Manufacturing Company***

Daniel J. McNamara, Esq.
DeCICCO GIBBONS & McNAMARA, P.C.
14 East 38th Street
New York, NY 10016
***Attorneys for Kaiser Gypsum Company,Inc.***

Rob C. Tonogbanua
DICKIE McCAMEY & CHILCOTE, P.C.
20 West Kings Highway, Suite 200
Haddonfield, NJ 08033-2116
***Attorneys for Kunkle Industries , TYCO Flow Control, Inc. and Yarway Corporation***

Linda Yassky, Esq.
SONNENSCHEIN NATH & ROSENTHAL, LLP
1221 Avenue of the Americas, 23rd Floor
New York, NY 10020
**Attorneys for Rapid-American Corporatin**

**Unknown Counsel**

American Export Lines
C.H. Wheeler Manufacturing Co.
Consolidated Valve. Ltd.
Dial Corp.
Moore-McCormack Lines
Robins Lines

00117864.WPD

By depositing a true copy of the same securely enclosed in a post-paid wrapper in the Post Office regularly maintained by the United States Government in said County of New York directed to said attorneys.

MEGAN E. SULLIVAN

Sworn to before me this
22nd day of May, 2008

NOTARY PUBLIC

CORRINNE DONALDSON
Notary Public, State of New York
No. 01DO6129839
Qualified in Nassau County
Commission Expires July 05, 2009

00117864.WPD

## TELECOPIER COVER LETTER

### LEVY PHILLIPS & KONIGSBERG, LLP
**800 Third Avenue, 13th Floor**
**New York, New York 10022**
**Telephone: (212) 605-6200**
**Facsimile: (212) 605-6290**

NAME OF SENDER: Kelly L. McNamee                            DATE: May 29, 2008

RE: Warren Taveniere
LPK FILE NO.: 08-0013

#### PLEASE DELIVER THE FOLLOWING PAGES TO:

Genevieve MacSteel, Esq.                                F:    (212) 715-2303
McGUIREWOODS
*Attorneys for American Standard, Inc.*

Nancy McDonald, Esq.                                F:    (973) 425-0161
Joseph LaSala, Esq.
MCELROY, DEUTSCH, MULVANY
& CARPENTER, LLP
*Attorneys for A.O. Smith Water Products*
*Company and Tuthill Energy Systems, Inc.*

Kerryann M. Cook, Esq.                              F:    (212) 509-4420
Richard E. Leff, Esq.
McGIVNEY & KLUGER, P.C.
*Attorneys for Aurora Pump Company,*
*Hercules Chemical Company, Inc.,*
*TACO, Inc. and The Falk Corporation*

Edward J. Wilbraham, Esq.                           F:    (215) 564-4385
WILBRAHAM, LAWLER & BUBA
*Attorneys for Buffalo Pumps, Inc.*

Julie Evans, Esq.                                      F:    (212) 490-3038
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
*Attorneys for A.W. Chesterton Co., Inc.*
*and Carrier Corporation*

John Fanning, Esq.                                   F:    (718) 935-1509
CULLEN & DYKMAN LLP
*Attorneys for Burnham Holdings, Inc.,*
*Goulds Pumps Incorporated and Leslie Controls, Inc.*

00118520.WPD

Judith Yavitz, Esq.                                         F:      (212) 521-5450
REED SMITH LLP
*Attorneys for Certainteed Corporation*
*and Union Carbide Corp.*

Cori Leavitt, Esq.                                          F:      (212) 791-0286
William J. Bradley III, Esq.
Robert C. Malaby, Esq.
MALABY & BRADLEY, LLC
*Attorneys for Cleaver-Brooks Inc.,*
*J.H. France Refractories Co. Viacom Inc.*
*and Weil McLain*

Michael Waller, Esq.                                        F:      (973) 848-4001
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS, LLP
*Attorneys for Crane Co.,*
*Crane Pumps & Systems, Inc.*
*and National U.S. Radiator*

Peter Langenus, Esq.                                        F:      (212) 972-8798
SCHNADER, HARRISON, SEGAL & LEWIS
*Attorneys for Dunham-Bush, Inc.*

William Mueller, Esq.                                       F:      (973) 455-8118
CLEMENTE MUELLER & TOBIA, P.A.
*Attorneys for Durabla Manufacturing*

Donald Fay, Esq.                                            F:      (201) 863-2866
WATERS McPHERSON McNEIL, P.C.
*Attorneys for Elliott Turbomachinery Co.*

John A. Turlik, Esq.                                        F:      (212) 651-7499
Ann Fenno, Esq.
Dave Weinberg, Esq.
SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
*Attorneys for Fairbanks Morse Pump Corp.,*
*Garlock Sealing Technologies, LLC, Gardner Denver, Inc.*
*and The Anchor Packing Company*

Michael A. Tanenbaum, Esq.                                  F:      (973) 242-8099
Diane Pompei, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD LLP
*Attorneys for Foster Wheeler Energy Corp.*

00118520.WPD

**CHART A**

**JOBSITE-SPECIFIC EXPOSURE HISTORY**

Re: Warren Taveniere

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| Frank Angelilli 57 Clinton Street Yonkers, NY | June 1950 – May 1951 | Yonkers - Sugar House and Commercial Sites - Exact locations are unknown at this time | June 1950 – May 1951 | Bricklayer | See Other ACM to Which You Were Exposed. | Plaintiff recalls working in the vicinity of others who worked with asbestos-containing materials and on asbestos-containing equipment including joint compound and other like products and equipment.<br><br>Plaintiff cannot presently identify all of the manufacturers of such products but states that he would have worked in the vicinity of others using all such materials manufactured during the periods he was employed.<br><br>Plaintiff may further rely upon the testimony of co-workers and other evidence demonstrating the presence of various manufacturers' products at various job sites.<br><br>At this time, Plaintiff recalls:<br><br>United States Gypsum<br>National Gypsum<br>Johns-Manville | | | |

Re: Warren Taveniere

**CHART A**
**JOBSITE-SPECIFIC EXPOSURE HISTORY**

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| Samworth Hughes Construction Co. 175 Market Street Paterson, NJ | May 1951 – Aug 1951 | Commercial Sites - Exact locations are unknown at this time | May 1951 – Aug 1951 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |
| Mahoney Troast Construction Co. 557 Main Avenue Passaic, NJ | Aug 1951 – Oct 1951 | Commercial Sites - Exact locations are unknown at this time | Aug 1951 – Oct 1951 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |
| rons & Reynolds Construction Co. 120 Lexington Ave. New York, NY | Oct. 1951 – Jan. 1952 | Commercial Sites - Exact locations are unknown at this time | Oct. 1951 – Jan. 1952 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |

00117025.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taventure

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| John B. Kelly 101 Park Avenue New York, NY | Dec. 1952 – Jan. 1953 | Commercial Sites - Exact locations are unknown at this time | Dec. 1952 – Jan. 1953 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |
| Kraft & Murphy Construction Co. 167 Tibbetts Road Yonkers, NY | Jan. 1953 – Dec. 1953 | Commercial Sites - Exact locations are unknown at this time | Jan. 1953 – Dec. 1953 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |

00117025.WPD

**CHART A**
**JOBSITE-SPECIFIC EXPOSURE HISTORY**

Re: Warren Taveniere

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite Including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| Moore McCormack Lines 5 Broadway New York, NY | March 1953 – May 1953 | S.S Mormacsurf | March 1953 – May 1953 | Engine Cadet | At this time, plaintiff believes he handled and/or worked with various types of asbestos-containing materials and equipment including boilers, turbines, compressors, valves, pumps and other like equipment.<br><br>Plaintiff cannot presently identify all of the manufacturers of such products but states that he would have handled and/or worked with all such materials manufactured during the periods he was employed.<br><br>Plaintiff may further rely upon the testimony of co-workers and other evidence demonstrating the presence of various manufacturers' products at various job sites. | Plaintiff recalls working in the vicinity of others who worked with asbestos-containing materials and on asbestos-containing equipment including boilers, turbines, compressors, valves, pumps and other like equipment.<br><br>Plaintiff cannot presently identify all of the manufacturers of such products but states that he would have worked in the vicinity of others using all such materials manufactured during the periods he was employed.<br><br>Plaintiff may further rely upon the testimony of co-workers and other evidence demonstrating the presence of various manufacturers' products at various job sites. | | | |

00117025.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taveniere

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite Including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | At this time, Plaintiff recalls the following, among others:<br><br>Equipment:<br>Aurora, Buffalo Pumps, Carrier, Crane, Consolidated Valves, DeLaval, Elliot Turbomachinery, Fairbanks-Morse, Falk, Foster Wheeler, Gardner Denver, Goulds, IMO, Ingersoll-Rand, Kunkle, Leslie, Taco, Tuthill, Warren, Westinghouse, Yarway<br><br>Gaskets/Packing:<br>AW Chesteron, Crane, Garlock, John Crane | At this time, Plaintiff recalls working around the following, among others:<br><br>Equipment:<br>Aurora, Buffalo Pumps, Carrier, Crane, Consolidated Valves, DeLaval, Elliot Turbomachinery, Fairbanks-Morse, Falk, Foster Wheeler, Gardner Denver, Goulds, IMO, Ingersoll-Rand, Kunkle, Leslie, Taco, Tuthill, Warren, Westinghouse, Yarway<br><br>Gaskets/Packing:<br>AW Chesteron, Crane, Garlock, John Crane | | | |
| Robins Lines 19 Cortlandt Street New York, NY | May 1953 – Aug 1953 | Robin Goodfellow, Erie Basin, Brooklyn | May 1953 – Aug. 1953 | Junior 3rd Assistant Engineer | See Moore McCormack Lines above. | See Moore McCormack Lines above. | | | |

04117025.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taveniere

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| American Export Lines 39 Broadway New York, NY | Aug. 1953 – Nov. 1954 | S.S. Constitution Pier 84, New York City / S.S. Explorer New York City | Aug. 1953 – Nov. 1954 | Junior 3rd Assistant Engineer | See Moore McCormack Lines above. | See Moore McCormack Lines above. | | | |
| Frank Angelilli 57 Clinton Street Yonkers, NY | Dec. 1954 – Jan. 1955 | Commercial Sites - Exact locations are unknown at this time | Dec. 1954 – Jan. 1955 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |
| Craft & Murphy Construction Co. 57 Tibbetts Road Yonkers, NY | Dec. 1955 | Commercial Sites - Exact locations are unknown at this time | Dec. 1955 | Bricklayer | See Frank Angelilli above. | See Frank Angelilli above. | | | |
| Combustion Engineering | March 1956 – July 1956 | To be provided | March 1956 – July 1956 | Office Worker | No known asbestos exposure. | No known asbestos exposure. | | | |
| American Export Lines 39 Broadway New York, NY | August 1956 – April 1957 | S.S. Constitution / S.S. Explorer | Aug. 1956 – April 1957 | Junior 3rd Assistant Engineer | See Moore McCormack Lines above. | See Moore McCormack Lines above. | | | |

00117025.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taveniere

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| Sparkman & Sterns New York City | April 1957 – Aug. 1958 | New York City | April 1957 – Aug. 1958 | Marine Engineer | Unknown at this time. | Unknown at this time. | | | |
| A&P Elmsford, NY | August 1958 – Feb. 1960 | Elmsford, NY | Aug. 1958 – Feb. 1960 | Operating Engineer Maintenance | No known asbestos exposure. | No known asbestos exposure. | | | |
| Acme Industries | Feb. 1960 – Jan. 1961 | To be provided | Feb. 1960 – Jan. 1961 | Sales | No known asbestos exposure. | No known asbestos exposure. | | | |
| Equitable Bldg. Maint. Co. Elmsford, NY | Jan. 1961 – Aug. 1961 | Elmsford, NY | Jan. 1961 – Aug. 1961 | Operating Engineer | At this time plaintiff recalls working on a boiler manufactured by Babcock & Wilcox | At this time, plaintiff recalls working in the vicinity of a boiler manufactured by Babcock & Wilcox. | | | |

QWD.52027LPO

## JOBSITE-SPECIFIC

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Person... |
|---|---|---|---|---|---|
| Travelers | Aug. 1961 – Nov. 1965 | Syracuse, NY and surrounding areas | Aug. 1961 – Nov. 1965 | Inspector | At this time, plaintiff bel handled and/or worked types of asbestos-cont materials and equipmen boilers, hot water heate and other like equipmer Plaintiff cannot present of the manufacturers of products but states that have handled and/or wo all such materials manu during the periods he w employed. Plaintiff will further rely testimony of co-workers evidence demonstrating presence of various ma products at various job At this time, Plaintiff rec A.O. Smith hot water he Cleaver Brooks boilers, Westinghouse elevators A.P. Greene refractory |
| Cleaver Brooks | Nov. 1965 – Sept. 1966 | To be provided | Nov. 1965 – Sept. 1966 | Salesman | No known asbestos e |

00117025.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taveniere

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM Identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| Travelers | Aug. 1961 – Nov. 1965 | Syracuse, NY and surrounding areas | Aug. 1961 – Nov. 1965 | Inspector | At this time, plaintiff believes he handled and/or worked with various types of asbestos-containing materials and equipment including boilers, hot water heaters, elevators and other like equipment. Plaintiff cannot presently identify all of the manufacturers of such products but states that he would have handled and/or worked with all such materials manufactured during the periods he was employed. Plaintiff will further rely upon the testimony of co-workers and other evidence demonstrating the presence of various manufacturers' products at various job sites. At this time, Plaintiff recalls: A.O. Smith hot water heaters, Cleaver Brooks boilers, Westinghouse elevators, and A.P. Greene refractory cements | Plaintiff recalls working in the vicinity of others who worked with asbestos-containing materials and on asbestos-containing equipment including boilers, hot water heaters, elevators and other like equipment. Plaintiff cannot presently identify all of the manufacturers of such products but states that he would have worked in the vicinity of others using all such materials manufactured during the periods he was employed. Plaintiff will further rely upon the testimony of co-workers and other evidence demonstrating the presence of various manufacturers' products at various job sites. At this time, Plaintiff recalls: A.O. Smith hot water heaters, Cleaver Brooks boilers, Westinghouse elevators, and A.P. Greene refractory cements | | | |
| Cleaver Brooks | Nov. 1965 – Sept. 1966 | To be provided | Nov. 1965 – Sept. 1966 | Salesman | No known asbestos exposure. | No known asbestos exposure. | | | |

80117025.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taventire

| Name of Employer | Dates of Employment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM¹ Used Personally | Other ACM to Which You Were Exposed² | Other Workers on Jobsite including supervisor | ACM identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| Joe Stevens | Sept. 1966 – April 1968 | To be provided | Sept. 1966 – April 1968 | Salesman | No known asbestos exposure. | No known asbestos exposure. | | | |
| General Electric Company Utica, NY | April 1968 – Dec. 1972 | Utica, NY | April 1968 – Dec. 1972 | Maintenance | Unknown at this time. | Unknown at this time. | | | |
| General Electric Company Wilmington, NC | Dec. 1972 – Feb. 1973 | Wilmington, NC | Dec. 1972 – Feb. 1973 | Plant Engineer | No known asbestos exposure. | No known asbestos exposure. | | | |

00117023.WPD

## CHART A
## JOBSITE-SPECIFIC EXPOSURE HISTORY

Re: Warren Taveniere

| Name of Employer | Dates of Employ yment | Asbestos related Jobsite & Address | Dates You Were at Jobsite | Job Duties | ACM[1] Used Personally | Other ACM to Which You Were Exposed[2] | Other Workers on Jobsite including supervisor | ACM Identified by Such other workers | Other companies Using ACM at Jobsite |
|---|---|---|---|---|---|---|---|---|---|
| J.W. Stevens | April 1973 – March 1979 | To be provided | April 1973 – March 1979 | Salesman | No known asbestos exposure. | No known asbestos exposure. | | | |
| General Electric Company | March 1979 – Dec. 1992 | To be provided | March 1979 – Dec. 1992 | Plant Engineer | No known asbestos exposure. | No known asbestos exposure. | | | |

1.    ACM - Asbestos Containing Materials of Products.

2.    Identify brand and manufacturer names, if known.

00117023.WPD

### AFFIDAVIT OF J. THOMAS SCHROPPE IN SUPPORT OF FOSTER WHEELER'S NOTICE OF REMOVAL

I, J. Thomas Schroppe, being under penalty of perjury, declare and say:

1.     I am a 1962 graduate of the New York State Maritime College with a degree in Marine Engineering.  For three months in 1962, I worked as a Third Assistant Engineer for American Export Lines.  I began my career at Foster Wheeler in 1962 as a Proposal Engineer in the Marine Department.  As a Proposal Engineer, I was responsible for taking shipyard specifications and designing a boiler to meet the thermal performance and physical requirements of those specifications.  In 1967, I became the Manager of the Proposal Department and reviewed all proposals.  In 1969, I was promoted to Vice President of Engineering at which point I supervised both proposal and contract execution activities. From 1975 to 1982, I was President of Foster Wheeler Boiler Corporation.  In 1982, I became Managing Director of Foster Wheeler U.K.  From 1984 to my retirement in 1999, I was Executive Vice President of Foster Wheeler Power Systems.

2.     I am personally familiar with the degree of supervision and control exercised by the Navy and its agencies in procurement contracts with Foster Wheeler for boilers and auxiliary equipment because I was personally involved in such contracts at all the various stages of development, from inquiry and bid through production, testing, and sea trials and, ultimately, acceptance.

3.     I submit this affidavit to attest to the degree of involvement, supervision, direction and control exercised by the U.S. Navy and its authorized agents and officers in connection with procurement contracts with Foster Wheeler for equipment to be installed aboard U.S. Naval vessels. The following paragraphs describe the contract process from the perspective of Foster Wheeler as the vendor, as well as the levels of interaction between Foster Wheeler and the Navy agents and personnel through the various stages of a given contract.

4.     Foster Wheeler furnished and fabricated marine propulsion boilers and related auxiliary systems for U.S. Navy, Maritime Commission, and Coast Guard ships under contract between Foster Wheeler and the shipyards and/or the United States Navy Department and its authorized agencies, officers and personnel (hereafter collectively referred to as the "Navy").

5.     The Navy was responsible for all phases of the design of a vessel, which was accomplished by the Naval architect. Specifically, the Naval architect would prepare the ship design which involved the entire vessel, including the machinery space, and all performance requirements. In general, the ship design for any given class of ship would be contained in a Ship Specification ("Ship Spec") which covers all aspects of the vessel including the machinery space. As it relates to the boiler, the Ship Spec would cover all boiler operating criteria, performance requirements, and maximum physical dimension of the boiler(s). In general, the Ship Spec was written and prepared by the naval architect and approved by the Navy and, in the course of its projects with the Navy, Foster Wheeler was required to design, fabricate and furnish equipment which complied strictly with the requirements in the Ship Spec.

6.     In addition to the Ship Spec, Foster Wheeler was also obligated to comply with Military Specifications ("Mil Specs") which cover all specific components of the boiler, including

accessories, subcomponents, and materials required to fabricate the boilers and its components.

7.    The normal process by which Foster Wheeler sold marine boilers to the Navy first involved receipt and response to an inquiry from either BuShips (Bureau of Ships) or the shipyard, depending on the Navy's procurement process. The boiler inquiry would be assigned to a proposal engineer at Foster Wheeler's marine department who would review the inquiry, which consisted of the Ship Spec and the associated drawings, for the performance requirements and size limitations of the boiler.

8.    The performance requirements are contained in the specifications, namely MIL-B18381 and the Ship Spec, which must be followed. I must point out that deviations from these specs were not acceptable as the boiler is just one piece of the entire power plant which was designed by BuShips or by a designated naval architecture firm such as Gibbs and Cox. In addition, the Foster Wheeler proposal engineer was aware that these requirements would be tested during the sea trials, so all calculations had to precisely conform with the Ship Spec.

9.    During the proposal phase, Foster Wheeler would prepare design drawings and related materials in conformance with the Ship Spec (which included performance specs and size limitations) and other requirements contained in MIL-B-18381 which was the Mil Spec pertaining to Naval propulsion boilers. I am personally familiar with the MIL-B-18381 as I saw it and referred to it throughout my career at Foster Wheeler. Foster Wheeler would prepare a proposal drawing and proposal specification that would outline the design and scope of material and equipment contained in the proposal. The boiler proposal submitted by Foster Wheeler would incorporate the specific requirements set forth in the Ship Spec and MIL-B18381.

10.    Approximately half way through the proposal process, information is forwarded to Foster Wheeler's estimating department to start to prepare an estimate of the boiler cost. In parallel, the proposal engineer starts calling vendors to obtain quotes for the various boiler accessories such as burners, sootblowers, gage glasses, safety valves, etc. All Navy approved vendors were asked to provide a quotation for the material in accordance with the Mil Spec covering their equipment or product.

11.    The finished boiler proposal consisted of an approximately 25 page booklet, a proposal drawing and an offering letter to the entity requesting a proposal so stating that the offering was in accordance with the Ship Spec and all required Mil Specs.

12.    The boiler proposal would be reviewed by the shipyard with the understanding that the proposed design, prepared specifically for the Navy in accordance with the Ship Spec. at issue, conformed to all appropriate specifications stated above. Once final price negotiations were complete, the contract was awarded to Foster Wheeler.

13.    The boiler specifications would provide detailed requirements for the boiler and would always reference the boiler Mil Spec (MIL-B-18381) which dictated very specific material requirements such as:

(a)    Boiler tubes: Type of tube, tube diameter, tube thickness, material, and tensile strength.

(b)    Refractory and Insulation: Specification identified the material, arrangement of various bricks and insulating materials on various boiler walls and provided specific Mil Specs for each type of insulating/refractory material.

(c)    Boiler accessories: All accessories applied to the boiler, such as burners, safety valves, soot blowers, must conform to a specific Navy Mil Spec for each such component.

14.    At receipt of an order the same Foster Wheeler proposal engineer is assigned the project as a contract engineer which will entail a more detailed recalculation of the thermal performance for the boiler. In addition, calculations of all the pressure drops, design of drum de-superheaters and final selection of all boiler accessories are made. All this work will be double checked by the head of engineering. In parallel, the contract engineer will commence discussions with the contract design department who will make all the drawings required for both manufacture, for submission to the shipyard and the Navy for review and approval. Foster Wheeler would not commence production of the boilers until the Navy issued final approval of these contract drawings. The approved drawings prepared during this phase would eventually be incorporated into the technical manuals.

15.    The contract design department also provides the material requisitions to the purchasing department so they may procure materials in accordance with Mil Specs. With regard to procurement of insulating and refractory material, the specific requirements for insulation and refractory items are listed in MIL-B-18381, which then references additional Mil Specs for each specific type of refractory/insulating material required. Foster Wheeler's procurement process would involve the purchasing department contacting the vendor and requesting a quotation for the material. The Foster Wheeler purchase order would reference the appropriate Mil Spec for each item shipped. The vendor, in turn, would supply materials that conformed to the Mil Spec and ship it directly to the shipyard. Finished products such as burners, sootblowers, and all refractory and insulating materials, etc. are shipped direct to the shipyard so they may be incorporated into the final boiler erection. Upon arrival at the shipyard, there would be a receipt inspection to ensure what was on bill of materials was delivered.

16.    During manufacture of the boiler, a Navy resident inspector was present at Foster Wheeler's shops. The Navy inspector would review all fabrication processes, welding procedures, pressure part welding, and all weld x-rays for conformity to Mil Specs. The inspector would also ensure that all materials used at this stage, e.g., steel, flanges, tubes, etc., conformed to applicable Mil Specs. All manufacturing was performed to drawings which had been reviewed and approved by the Navy.

17.    Once individual components (e.g., headers, tubes, pressure parts) were manufactured, inspected by a Foster Wheeler quality control inspector, and inspected and stamped with approval by the resident Navy inspector, the materials/components were moved to the shipping area. At this point, the boiler fabrication was complete, though the boilers were in a "knocked down" condition (unassembled) for shipment. The boiler components and related materials were wrapped and/or boxed in accordance with Mil Specs relating to packaging and shipment of materials, which is also referred to in Mil Spec MIL-B-18381.

18.    The knocked down boilers are then shipped from Foster Wheeler's facility to the shipyard for assembly. For those not familiar with Naval propulsion boilers, they are simply too large and heavy to be shipped assembled. The assembly is done by shipyard workers with a Foster Wheeler employee on site to interpret drawings and answer questions that may arise during the assembly process. Resident Navy inspectors also witness the boiler assembly process.

19.    A critically important inspection item is the hydrostatic test put on the boiler after complete assembly of the pressure parts. This test is a water pressure test of the boiler at 50% over the boiler design pressure. At this point, leaks, even small ones, are not acceptable to the Navy. Formal written acceptance at this stage by the Navy inspector is a requirement. The boilers now sit idle in the ship as the remainder of the engine room and the balance of the ship are being completed. It is at this point that all the engine room piping is connected to the various connections on the boiler. Following the piping tests (shipyard responsibility) the shipyard insulates all piping up to the boiler casings.

20.    Upon completion of the vessel by the shipbuilder, dock trials start to test the various machinery systems in the engine room. The boilers are run at low power since the main turbine cannot be run very fast at the dock because any higher powers would tear the ship loose from the pier. Full power testing is done during sea trials where all aspects of the boiler performance are thoroughly tested. Foster Wheeler would send a service engineer to witness these tests and answer any questions which may arise. Foster Wheeler frequently sent the contract engineer on the first ship of a new class to obtain first-hand data on the boiler performance. Sea Trials were performed on every ship and formal approval by the head Navy inspector was required. Any punch list items which were identified had to be corrected before final acceptance of the boilers.

21.    In addition to the above design, manufacture and testing there remains an obligation by Foster Wheeler to provide technical manuals for the boilers furnished in a given Navy contract. The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers such as engineering drawings, test reports and other technical data that could be used as needed by shipboard engineering officer during the life of the equipment. The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers only to the extent directed by the Navy.

22.    Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy.  Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed this 16th day of March, 2006 at Newark, New Jersey.

J. Thomas Schroppe

THE STATE OF NEW JERSEY

ESSEX COUNTY                    )

Personally appeared before me this        day of March, 2006, J. Thomas Schroppe, who made oath that the statements contained in the affidavit above are true and correct to the best of his knowledge.

Subscribed and sworn to before me this _10th_ day of _March_ 2006. My

commission expires _4/1/07_

Notary Public        HEDWIG BACHLER
A NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 1, 2007

**AFFIDAVIT OF ADMIRAL BEN J. LEHMAN, U.S. NAVY, RETIRED**
**IN SUPPORT OF FOSTER WHEELER'S NOTICE OF REMOVAL**

I, Ben J. Lehman, understanding and being under the penalty of perjury, declare:

1.     I am a Rear Admiral, Retired, of the United States Navy [U.S. Navy]. I received notice of my commission as an Ensign in April, 1942 and commenced active duty in the U.S. Navy on June 1, 1942. Immediately prior to commencing active duty in the U.S. Navy, I attended the College of the City of New York. I had been a "student engineer" at the Mack Manufacturing Co. [Mack Trucks] in Allentown, PA and had been enrolled as a special student at Lehigh University, Bethlehem, PA from June 1941 until January 1942. I returned to the College of the City of New York in order to complete my course work there and then enter military service. I had already completed two years of U.S. Army ROTC. On entering active duty, the U.S. Navy ordered me to study naval architecture and marine Engineering at the Massachusetts Institute of Technology [MIT]. Later, I was ordered to the U.S. Naval Academy Post-Graduate School at Annapolis [now the U.S. Navy Post-Graduate School in Monterey, CA]. I received a Master of Science [SM] from Harvard University in 1949. I studied Design Philosophy and Advanced Stress Analysis at Stanford University in 1957 and 1958. In the U.S. Navy, I served as a Ship Superintendent and Dry Docking Officer at the New York Naval Shipyard [formerly the Brooklyn Navy Yard], between 1942 and 1944, as a Ship Superintendent at the San Francisco Naval Shipyard from September 1950 to May 1952, and as a Planning Officer at the Assistant Industrial Manager, San Francisco from 1952 to 1954. In the Navy, I have always been an Engineering Duty Officer. I was promoted to Rear Admiral in 1977 in the Naval Reserve. I was employed as an engineer by the General Electric Co. between 1946 and 1958, and by the Bethlehem Steel Co.'s Shipbuilding Division in 1949 and 1950. I held the positions of Director of Engineering at a major shipbuilding company in Seattle, WA from 1969 to 1972 and of Vice President of Engineering in

Pascagoula, MS from 1972 to 1975. During all these periods I have maintained close contact with the U.S. Navy. During times of civilian employment, I have had periods of active duty in the Department of Defense [DOD], the Naval Sea Systems Command [NAVSEA] in Washington, D.C., and shipyards. My experience has caused me to be thoroughly familiar with U.S. Navy specifications by means of which the U.S. Navy controlled its contracts and inspection procedures, and thereby controlled its suppliers. Since my retirement in 1982 my specific knowledge of new procedures has decreased. I have been an independent consultant since 1975. I have personal knowledge of the facts herein.

2.      I submit this Affidavit in support of Foster Wheeler's Notice of Removal to attest to the levels of direction, control, and supervision exercised by the U.S. Navy over the design and manufacture of equipment, including boilers and their auxiliary equipment [collectively referred to as "boilers"] designed and constructed for installation on ships of the U.S. Navy.

3.      During my service in the U.S. Navy as a Ship Superintendent, I was personally involved with supervision and oversight of ship's overhauls and alterations. I was fully aware that only boilers especially designed and built for the propulsion of U.S. Navy combat vessels, including Foster Wheeler boilers, could be installed. These were designed and manufactured in accordance with detailed specifications written, approved, and issued by the U.S. Navy, specifically NAVSEA or its predecessors, including the Bureau of Engineering.

4.      The U.S. Navy chain of command concerning ship construction comprised several layers. The Secretary of the Navy [subject to the President and Congress] had the ultimate authority related to contractual and technical control. An Under Secretary was directly concerned with ship acquisitions. The Under Secretary position has now been eliminated, and that authority now rests with the Chief of Naval Operations who provides NAVSEA with the

desired ship characteristics, and oversees its performance. In the 1930s, Foster Wheeler, as a boiler and heat exchanger manufacturer, was under the cognizance of the Bureau of Engineering. The representative of that Bureau at the plant was an Inspector of Naval Machinery. The Bureau of Engineering and the Bureau of Construction and Repair were combined in 1940 to create the Bureau of Ships: for a time Approvals were required from both the Inspector of Machinery and the Supervisor of Shipbuilding for the lead ships of a class. Later, the Inspectors of Naval Machinery were renamed Inspectors of Naval Material. About 1958, the Bureau of Ordnance was merged with the Bureau of Ships to form NAVSEA. As a reduction in the pace of shipbuilding continued, routine inspection responsibilities were assumed by a new organization: the Defense Contract Administration Services Agency [DCASA]. This organization had many responsibilities, but lesser technical qualifications. Technical questions were referred to the Bureaus [Commands] in Washington. Throughout all of these reorganizations there were no changes in the ultimate authorities or the responsibilities of those authorities. Suppliers of equipment and the builders of ships have had the U.S. Navy's acceptance of their products determined by representatives of different organizations at different times but NAVSEA or its predecessors always had the ultimate authority and the professional competence to accept or reject them.

5.      Under NAVSEA, as under its predecessors, the U.S. Navy's shipbuilding and acquisition of equipment for the ships comprised several levels of authority. Detailed technical control over ship design, construction, repair, and inspection was in NAVSEA. The Commander of Naval Supply Systems Command [NAVSUP] had contractual control of some procurements. Each of these two organizations had oversight responsibilities regarding, among other things, boilers manufactured for U.S. Navy vessels. Compliance with the specifications and standards was directly monitored by Inspectors of Naval Machinery under both these divisions: those

under NAVSUP generally worked on site at the supplier's [in this case Foster Wheeler's] manufacturing facilities and Machinery Superintendents or Inspectors of Naval Machinery carried out their responsibilities at the shipbuilding yards. Moreover, it was common in my experience for technical personnel from the Propulsion Equipment Groups of NAVSEA to inspect the manufacturing and quality assurance processes at supplier's plants and the boiler erection and inspection procedures at the shipyards. In my experience, it was machinery inspectors who exercised primary, front line control over the work performed for the Navy by suppliers such as Foster Wheeler in the production of boilers and other equipment. The Inspectors of Naval Machinery [or those with other titles who succeeded them] were responsible for assuring that contractors such as Foster Wheeler complied with the contract specifications every detail. Further, the Inspectors of Naval Machinery would report to their superiors any violations of, or failures to comply with specifications, refuse to apply their stamp of approval, and not authorize shipment. This was true whether the installation was to be done by government shipyards or government contract shipyards.

5.      The U.S. Navy retained the "final say" over the design of any piece of equipment, and made the ultimate decisions, whether engineering or contractual.

6.      Further, I can attest that the military specifications for boilers and other equipment intended for use on vessels of the U.S. Navy, known as "MilSpecs", were drafted, approved, and maintained by the U.S. Navy, specifically NAVSEA or its predecessors, to encompass all aspects of shipboard equipment, including the material requirements.

7.      These contract specifications reflected the state of the art and the special needs of vessels destined for combat. NAVSEA maintained and controlled the MilSpecs because it had direct contact with the forces afloat and the shipyards, and therefore superior knowledge of the

demands and requirements of vessels ready for combat, and the availability of processes and materials.

8.    The U.S. Navy's unique specifications for boilers were communicated to boiler suppliers such as Foster Wheeler when the U.S. Navy, either directly or through its contractors, issued a negotiated contract or a Request for Proposal for equipment. The U.S. Navy specifications included the nature of any communication affixed to boilers or other equipment supplied to the U.S. Navy.

9.    The U.S. Navy had complete control. It could not, and did not, permit its contractors to implement any changes. Every aspect of every item needed to be controlled because:

   a.    it had to be consistent with the ability of the crew to operate the ship, especially on its combat missions;

   b.    it had to be compatible with the ability of the crew to maintain the ship and perform emergency repairs during its service using materials and parts carried on board when shipyard assistance was not available;

   c.    every item had to be functionally compatible, fit in the space available, and be maintainable and operable with materials available from the U.S. Navy's supply system.

10.    The U.S. Navy had complete control over every aspect of every piece of equipment. Military specifications governed every significant characteristic of the equipment used on U.S. Navy ships, including the instructions and warnings. Drawings for nameplates, the texts of instruction manuals, and every other document relating to construction, maintenance, and operation of the vessel was approved by the U.S. Navy. This control included the decision of which warnings should or should not be included. Thereby, the U.S. Navy controlled the decisions with regard to instructions and warnings on every piece of equipment. The U.S. Navy would not, and could not, permit any equipment manufacturer or supplier to interfere with the Navy's mission by placing warnings on any equipment [or in any instructions or manuals which accompanied the

equipment] on any U.S. Navy ships or in any shipyards in which U.S. Navy ships were built or repaired that might cause Sailors or workers to deviate from their mission or require the U.S. Navy to devote scarce resources to programs it deemed not essential, in its unilateral view.

11.    In addition to specifications for the design and manufacture of the equipment itself, the U.S. Navy also had detailed specifications that governed the form and content of the written materials to be delivered with the equipment, including boilers, supplied to the U.S. Navy. The U.S. Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied or related to any piece of equipment. The U.S. Navy determined the nature of hazards to be subject to any precautionary labeling and the content of such labeling. In short, the U.S. Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors.

12.    The U.S. Navy would never permit a supplier to suggest, advise, or require any actions that would be disruptive to the normal operation of the ship in its primary function of defending our Country. Procedures for operation were taught and enforced by officers of all ranks, from Petty Officers to Captains. Any written material regarding procedures for working around boilers that differed would have interfered with the normal and necessary operations of U.S. Navy ships. Indeed, in its specifications for manuals the U.S. Navy specifically limited warning information to items and events dealing with the operation of equipment. By definition, the application or removal of insulation would not have been included.

13.    Asbestos was rampant throughout U.S. Navy ships. Sailors and civilian personnel were exposed at all times when they were aboard ships regardless of where they were stationed or where they worked. In order to protect all these individuals from exposure to asbestos, the U.S.

Navy would have had to allocate scarce resources to provide respiratory protection for all sailors and workers every hour of every day that they were on board. Implementing wet down procedures and creating containment areas would also have been required to implement effective industrial hygiene programs. The U.S. Navy made a conscious decision on allocation of its resources in light of its knowledge of the hazards of asbestos and its mission to protect our Country. The U.S. Navy conducted extensive research concerning the hazard of exposure to asbestos starting in the 1930's. In the early 1940's, the Navy's Bureau of Medicine and Surgery, in coordination with the U.S. Maritime Commission, set standards based on the report of Dr. Drinker and Fleischer and Marr. Through its participation in government programs and conferences into the 1980's, the Navy stayed abreast of the latest information, including the results of research. The U.S. Navy made a conscious and informed decision about how asbestos would be used on its ships and how exposures would be controlled, if at all, on its ships.

14.     The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment. This would have included boilers. Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor in accordance with its contracts, including its technical and operations manuals. To do so would have interfered with the U.S. Navy's mission and control of its ships and personnel.

I declare under penalty of perjury that the foregoing is true and correct, and that if called as a witness, I could competently testify to the foregoing facts, all of which are within my own personal knowledge.

Ben J. Lehman, Rear Admiral, U.S. Navy, Ret.

Before me, the undersigned officer, personally appeared Ben J. Lehman, Rear Admiral, U.S. Navy, Ret. known to me to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal acknowledge.

Executed this ___12th___ day of ___July___ 2007.

On this 12 day of 07,2007, before me, a Notary Public,



___Josh Martin___

MY COMMISSION EXPIRES ___August  28, 2010___

JOSH MARTIN
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 06-109087-5
MY APPT. EXPIRES AUGUST 28, 2010